## LOCAL UNION NO. 65 OF AMALGAMATED SHEET METAL WORKERS' INTERNATIONAL ALLIANCE v. NALTY.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1925.)

No. 4269.

**1. Trade unions ⬅4 — Negotiations for adjustment of wage scale held not equivalent to lockout, warranting refusal of admission to local union.**

Negotiations with employers for adjustment of wage scale *held* not equivalent to lockout, so as to entitle local union to refuse to accept a transfer card, under constitution of international union.

**2. Trade unions ⬅9—Member of trade union has action at law for damages on wrongful exclusion or suspension.**

Although, where no property rights are involved, equity will not generally interfere with acts of a union in suspending or expelling a member, such member is entitled to abandon claim to membership and resort to action at law for damages for wrong done, and in such case is not bound by action of union, when contrary to its own constitution.

**3. Trade unions ⬅4, 9—Local union required to inform applicant with transfer card, who had been refused once, that subsequent offer to accept him was unconditional; instruction in suit for refusal of admission to local union held erroneous.**

Where member of international labor union had been refused admission to local union, and had filed claim for damages with general executive committee, local union, in subsequently offering at meeting to consider claim to accept member on his procuring another transfer card, had duty of advising member that offer was unconditional, and would not constitute waiver of right to obtain redress for previous wrong, and instruction to jury to that effect, relative to duty of mitigating losses, was not erroneous.

**4. Trade unions ⬅9—Member refused admittance to local union had no duty to go to another city to secure work in mitigation of losses.**

Member of labor union who was refused admittance by local union after moving to that city to live *held* not to have duty to abandon his home and go to another city to find employment to mitigate his losses.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Stephen J. Nalty against Local Union No. 65 of the Amalgamated Sheet Metal Workers' International Alliance. Judgment for plaintiff, and defendant brings error. Affirmed.

The Amalgamated Sheet Metal Workers' International Alliance is a union of men engaged in the sheet metal workers craft throughout the United States and Canada. It is made up of local unions, among which are Locals No. 12 of Pittsburgh, Pa., and No. 65 of Cleveland, Ohio. Nalty, the plaintiff below, was a member of the Pittsburgh Local in March, 1921, and secured from it a transfer card on moving to Cleveland to reside. He presented his card to an officer of the Cleveland Local April 3, 1921, for the purpose of identifying himself with the organization in that city, and with the expectation of procuring work as a union man. The application was referred to the executive committee, which four days later refused to admit him to membership. Subsequent applications were rejected, and in the meantime the Pittsburgh Local, at Nalty's request, filed a claim against Local No. 65 with the general executive committee for losses resulting, as Nalty claimed, from the refusal of the Cleveland Local to recognize his card. On September 21, 1921, a member of that committee came to Cleveland, met with the executive officers of the local committee, and at a hearing held sustained the several actions of the local committee. It was proposed, however, to Nalty at the meeting that, if he would procure another transfer card from the Pittsburgh Local and present it, he would be accepted. He and Coulter, who represented him at the hearing, said that the proposed acceptance was conditioned upon his waiving his claim for losses ensuing from the previous refusals. Witnesses for the defendant testified that the offer was unconditional.

In October, 1921, the general executive committee considered informally Nalty's claim, denied it, and confirmed the action of Local No. 65. In July of 1922 a rehearing was held in New York, plaintiff, with others, appearing, at which the committee finally disposed of the matter by an affirmation of

its former decision. While these matters were pending Nalty continued to reside in Cleveland. The opportunities for employment in sheet metal work in that city were practically limited to members of the Cleveland Local. Nalty sought employment during the time, but, not having a card in the local, was unable to procure it, except for a period of two months. After the general executive committee had reaffirmed the rulings of the Cleveland Local, he instituted this suit for damages.

Luther Day and Wm. J. Dawley, both of Cleveland, Ohio (Day & Day and J. Paul Thompson, all of Cleveland, Ohio, on the brief), for plaintiff in error.

W. K. Stanley, of Cleveland, Ohio (Stanley & Horwitz, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge (after stating the facts as above). [1] The Constitution of the Amalgamated Sheet Metal Workers' International Alliance provides: "The transfer card of a member of a local union attached to this International Alliance shall be recognized by the union in which he desires to deposit it, upon the payment of the difference, if any, of the initiation fee of the local union to which he belongs and the union in which he desires to deposit it, accompanied with an official receipt, except in localities where strikes or lockouts exist." This provision is mandatory save "where strikes or lockouts exist." It is suggested, however, that the exception applied, as the negotiations with the employers for an adjustment of the wage scale, pending when plaintiff's application was first presented, were the equivalent of a lockout. We do not think so. Besides, the wage scale was settled in June, and thereafter the Cleveland Local repeatedly refused to accept the transfer, and its rulings were approved by the general executive committee.

[2] To the insistence that the decision of the union cannot be reviewed by the courts a complete answer, it would seem, is that the decision was not in accord with the union's constitution. In such case the member who has been wrongfully denied his rights is not bound by the action of the union. There are cases, cited by defendant, holding that in suspending or expelling a member the acts of the association are quasi judicial, and a court of equity will not lend itself to efforts at restoration. Where no right of property is involved, this is generally true. Kearns v. Howley, 188 Pa. 116, 41 A. 273, 42 L. R. A. 235, 68 Am. St. Rep. 852. We are not concerned with those cases. This is an action at law for damages in redress of a wrong, and the general rule is that one who has been wrongfully suspended or expelled from an association may abandon his claim to membership and resort to an action for damages for the wrong done. Lahiff v. Benevolent Society, 76 Conn. 648, 57 A. 692, 65 L. R. A. 92, 100 Am. St. Rep. 1012; Brennan v. United Hatters, 73 N. J. Law, 729, 65 A. 165, 9 L. R. A. (N. S.) 254, 118 Am. St. Rep. 727, 9 Ann. Cas. 698. The right exists independently of the exhaustion of remedies in the order. Plaintiff exhausted every reasonable means at his command to procure within the order the rights to which he was entitled before resorting to this action. Defendant withheld them. He is not without remedy for the wrong. Independent Order v. Wilkes, 98 Miss. 179, 53 So. 493, 52 L. R. A. (N. S.) 817. As there is no provision in the constitution or by-laws that a member of the order must resort to its tribunals for redress, nor any that, having done so, both are bound by the decision, we need not consider whether the presence of such provisions would lead to different results.

[3] Complaint is made of that part of the charge which told the jury, in effect, that it was the duty of defendant, when it offered on September 21st to accept a transfer card if plaintiff would procure a new one, to advise him that the offer was unconditional, so that he would not be put to the risk and hazard by accepting it of waiving his right to redress for previous wrongs, if any had been committed. The objection would be forceful if the negotiations of that date had related exclusively or in their major purposes to membership in the local union. But they did not. The meeting was called to consider the claim that plaintiff had filed with the general executive committee. The parties were conferring about it. The proof shows that it was discussed in connection with the offer, though as to what was said there are different versions. From these facts it is fair to assume that the offer was incidental to the purposes of the meeting. The connection in which the offer was made and the purposes for which the imposed condition was considered by the jury

are determinative of the effect of the instruction. The language complained of was used in defining plaintiff's duty to mitigate his losses. It was stated in the charge that it was his duty to accept the offer of September 21st and procure work thereafter, if he could, as a member of the local union; but he was not required to do so, in mitigating his damages, unless at the time the offer was made he was advised that it was unconditional so far as his claim was concerned. Certainly it was not his duty to accept the offer if it was made upon the condition that he abandon his claim. A permissible if not the only logical inference from the circumstances referred to—in the absence of a statement to the contrary—was that the offer was conditioned upon a renunciation of the claim. It was not, therefore, error to require defendant to have informed plaintiff that an acceptance of the offer would not prejudice his claim.

[4] What we have heretofore said disposes of the assignments of error on the court's refusal to give the charges requested. As to the contention that there is not substantial evidence to support so large a verdict, it is sufficient to say that, if plaintiff had been regularly employed during such time as he was unable to obtain employment between April 3, 1921, and June, 1922, his earnings, with interest thereon from the date of the final action of the executive committee, and what he expended in mitigating his losses, would have amounted to more than the verdict. But it is said that work was scarce, and he would not have been able to procure it in Cleveland, even if given a card, and further that it was his duty to go to another city and find employment. On the first point the evidence is conflicting, but supports the award. With the second we cannot agree. Plaintiff was entitled to membership in the local union. His home was in Cleveland, and he had the right to confine his efforts to the city in which he lived. It would be too much to expect one who is lawfully entitled to membership in a local union, and who has been denied that right, to abandon his home and go to another city for the purpose of mitigating his losses. If, as the evidence tends to show, he exercised the proper degree of diligence in attempting to procure work which he was capable of doing within the city of Cleveland, he performed every duty that he was required to perform.

The judgment is affirmed.