Gene **DETROY,** Plaintiff-Appellant,

v.

**AMERICAN GUILD OF VARIETY ARTISTS,** Joey Adams, as its President and Joe Smith, as its Treasurer, Defendants-Appellees.

**No. 190, Docket 26548.**

United States Court of Appeals Second Circuit.

Argued Nov. 16, 1960.

Decided Jan. 13, 1961.

2. Rule 9(b) Fed.Rules Civ.Proc., 28 U.S.C.A.

Henry M. Katz, New York City (Abbie Goldstein, New York City, on the brief), for plaintiff-appellant.

Aaron Benenson, New York City (Harold F. Berg, Arnold R. Streit, and Mark K. Benenson, New York City, on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.

LUMBARD, Chief Judge.

The appellant, manager and trainer of a troupe of chimpanzees with which he performs professionally under the name of the "Marquis Family" in theaters, night clubs, circuses, on television, and in motion pictures, instituted this proceeding under § 102 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 412, demanding injunctive relief and damages for an alleged violation of the procedural rights granted union members by § 101(a) (5) of the Act, 29 U.S.C.A. § 411(a)˙(5).[1] Upon a motion for summary judgment, the district court dismissed the complaint on the ground that under § 101(a) (4) the plaintiff could bring no court action against a labor union without first exhausting the internal remedies provided by the union, and that in this case the defendant union had established reasonable procedures by its constitution

---

1. "(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

whereby claims against it by members could be heard within the four-month period permitted by the law.

The controversy between the appellant and the American Guild of Variety Artists, a labor union representing variety entertainers in the United States and Canada, arose out of a breach-of-contract claim made against the appellant by a resort hotel in Las Vegas, Nevada. After failing to settle the dispute by negotiation, the AGVA requested the parties to submit it to arbitration, which they did. A panel of three, one selected by each of the parties to the dispute and the third chosen by the two so designated, met in Los Angeles County, California, on January 12, 1960, and decided in favor of the hotel. The union then advised the appellant that if he did not abide by the award, it would place him on the "National Unfair List" appearing in its monthly periodical "AGVA News." The appellant replied that he intended to move to vacate the arbitration award in the California courts, but never began any such proceedings. When the three months provided by California law for vacating arbitration awards had elapsed, the union proceeded to publish the appellant's name in the August 1960 issue of the periodical under a heading which read as follows:

"Notice to Members.

"The rules require that you may not work for any employer, agent, booker or third party who is marked 'Unfair' by AGVA. Violation of these rules subjects you to disciplinary action.

"Notice to Agents

" * * * You are not authorized to book AGVA members in unfair establishments or book performers not in good standing in AGVA. Violation of rules subjects you to revocation of your franchise."

The appellant then began this proceeding in the Southern District of New York, claiming that the listing amounted to disciplinary action within the meaning of § 101(a) (5) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 411(a) (5), and that he was, therefore, entitled to specific written charges, a reasonable time to defend, and a full and fair hearing before having his name placed on the list.

The appellant did not, however, seek to utilize the procedure made available by Article XX of the Constitution of the AGVA. This article, entitled "Claims of Members," establishes procedures whereby claims asserted against the union are heard and determined by its Board or Executive Committee. Thus, the first issue before us now is whether the proviso in § 101(a) (4), which protects the right of a union member to sue his union, "Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof," required of the appellant in this case that he first have recourse to the internal procedures established by the union's constitution. The exhaustion proviso of § 101(a) (4) does not appear in § 102, which grants members who claim that their rights under § 101 have been infringed a federal forum in which to litigate their disputes with the union. It might also appear from the rejection by the House of Representatives of H.R. 8342, the bill originally reported out of the Committee on Education and Labor, which explicitly provided for exhaustion of internal remedies in § 102, that Congress did not mean to have the exhaustion doctrine apply to the rights granted by § 101, except where, as in the case of the right to sue, it was expressly provided. However, the broad language of the proviso in § 101(a) (4) includes suits instituted against labor unions in any court on any claim. Absent a clear directive by Congress, the policy formulated over a course of time by courts reluctant to interfere in the internal affairs of private organizations should not be superseded. We hold, therefore, that the provision in §

101(a) (4) applies, as well, to suits brought in the federal courts for violations of the rights secured by § 101.

Judge Dimock in this case read § 101 (a) (4) as imposing upon the union member an absolute duty to exhaust union remedies before applying to the federal courts. The legislative history of the section indicates, however, that Congress had no intention of establishing such a rule.[2]

■ The statute provides that any member of a labor organization "may be required" to exhaust the internal union remedies, not that he "must" or "is required to" exhaust them. When read in light of the statements made on the floor of Congress by the authors of the statute, it appears clear that the proviso was incorporated in order to preserve the exhaustion doctrine as it had developed and would continue to develop in the courts, lest it otherwise appear to be Congress' intention to have the right to sue secured by § 101 abrogate the requirement of prior resort to internal procedures. In addition, the proviso dictated an outside limit beyond which the judiciary cannot extend the requirement of exhaustion—no remedy which would require proceedings exceeding four months in duration may be demanded. We therefore construe the statute to mean that a member of a labor union who attempts to institute proceedings before a court or an administrative agency may be required *by that court or agency* to exhaust internal remedies of less than four months' duration before invoking outside assistance.

■ Section 102, under which the appellant instituted his proceeding, provides for enforcement by federal courts of rights secured by federal law. We are not in this case, therefore, bound by the doctrine of exhaustion as developed in the New York, Nevada, or California courts with respect to suits against unions brought in the courts of those states by union members. In enforcing rights guaranteed by the new statute, whether or not similar rights would be enforced under state law by state courts, the federal courts may develop their own principles regarding the time when a union's action taken in violation of § 101 is ripe for judical intervention. Cf. Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743; Sola Electric Co. v. Jefferson Electric Co., 1942, 317 U.S. 173, 176–177, 63 S.Ct. 172, 87 L.Ed. 165. The rules formulated by various state courts may suggest helpful avenues of approach, cf. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d

2. For example, one of the authors of the bill passed by the House, Representative Griffin, expressed a clear opinion on the question. He said:

"The proviso which limits exhaustion of internal remedies is not intended to impose restrictions on a union member which do not otherwise exist, but rather to place a maximum on the length of time which may be required to exhaust such remedies. In other words, existing decisions which require, or do not require, exhaustion of such remedies are not to be affected except as a time limit of 4 months is superimposed. Also, by use of the phrase 'reasonable hearing procedures' in the proviso, it should be clear that no obligation is imposed to exhaust procedures where it would obviously be futile or would place an undue burden on the union member." 105 Daily Cong.Rec.App. A7915 (Sept. 4, 1959).

The statement made by Senator Kennedy, who introduced the original bill to which §§ 101–105 were added as amendments on the Senate floor, is also representative of the attitude taken by those who instituted the legislation. He said:

"Nor is it the intent or purpose of the provision to invalidate the considerable body of State and Federal court decisions of many years standing which require, or do not require, the exhaustion of internal remedies prior to court intervention depending upon the reasonableness of such requirements in terms of the facts and circumstances of a particular case. * * * The doctrine of exhaustion of reasonable internal union remedies for violation of union laws is just as firmly established as the doctrine of exhausting reasonable administrative agency provisions prior to action by courts." 105 Daily Cong.Rec. 16414 (Sept. 3, 1959).

972, but the authority granted to the federal courts by Congress to secure the rights enumerated in § 101 of the 1959 Act is accompanied by the duty to formulate federal law regarding a union member's obligation to exhaust the internal union remedies before seeking judicial vindication of those rights.

If we look to the substantial body of state law on the subject, we find that the general rule requiring exhaustion before resort to a court has been almost entirely swallowed up by exceptions phrased in broad terms. See Annotation 168 A.L.R. 1462 (1947); Summers, Legal Limitations on Union Discipline, 64 Harv.L. Rev. 1049, 1086–92 (1951). Rather than decide whether exhaustion is proper by determining whether the union's action can be characterized as "void" (e. g., Tesoriero v. Miller, 1949, 274 App.Div. 670, 88 N.Y.S.2d 87) or as "affecting property rights" (e. g., Local Union No. 65 of Amalgamated Sheet Metal Workers, etc. v. Nalty, 6 Cir., 1925, 7 F.2d 100), we believe it preferable to consider each case on its own facts.

The Congressionally approved policy of first permitting unions to correct their own wrongs is rooted in the desire to stimulate labor organizations to take the initiative and independently to establish honest and democratic procedures. See Cox, The Role of Law in Preserving Union Democracy, 72 Harv.L.Rev. 609, 615 (1959). Other policies, as well, underlie the exhaustion rule. The possibility that corrective action within the union will render a member's complaint moot suggests that, in the interest of conserving judicial resources, no court step in before the union is given its opportunity. Moreover, courts may find valuable the assistance provided by prior consideration of the issues by appellate union tribunals. See Summers, The Law of Union Discipline: What the Courts Do in Fact, 70 Yale L.J. 175, 207 (1960). Congress has provided a safeguard against abuse by a union of the freedom thus granted it by not requiring exhaustion of union remedies if the procedures will exceed four months in duration. But in any case, if the state of facts is such that immediate judicial relief is warranted, Congress' acceptance of the exhaustion doctrine as applied to the generality of cases should not bar an appropriate remedy in proper circumstances.

■ The affidavits and exhibits submitted in the district court on the motion for summary judgment establish that the only hearing given the appellant before his name was placed on the National Unfair List was that of the arbitration proceeding. The union was not a party to the arbitration, and the issue decided by the arbitrators was not whether the appellant should be disciplined by the union but whether he owed an obligation to an employer with whom he had contracted. It is undisputed that no hearing was held in which the appellant could respond to the union's intention of taking disciplinary action. Quite clearly, a hearing in which some liability between a union member and a third party is determined is not the type of hearing demanded by § 101(a) (5). At no time was the appellant given the opportunity of arguing before the union's hearing board that placing him on the Unfair List exceeded the powers granted to the union by its constitution, nor could he raise other mitigating circumstances in response to an expressed intention to place his name on such a list. The facts on their face, therefore, reveal a violation of the rights guaranteed union members by § 101(a) (5). If the question before us were whether the union's constitution authorized the listing of the appellant's name on an unfair list after a hearing with due procedural safeguards, a union tribunal might provide some insight to aid our decision. But no prior consideration by such a tribunal is necessary or helpful on the question whether the treatment of the appellant violated § 101(a) (5).

In addition, the particular form of the disciplinary action makes it difficult for the union to provide an adequate remedy. The appellant, from the date his name appeared on the list, was virtually barred from employment by those dealing regularly with the AGVA. Since he is an

independent contractor whose weekly pay varies according to the terms of the contracts he signs with his employers, the precise extent of damages suffered by the appellant as a result of the listing can never be determined. Even were the union to permit him to present his case before a review board, the board could merely order his name removed from the list and, in order to provide a more satisfactory remedy, award as damages for the period during which he was barred from employment a sum which, at best, could only be an approximation. It appears unlikely that Congress intended that its expressed desire to provide minimum safeguards against arbitrary union discipline be avoided by the union's imposition of a sanction which has its most severe effect within a four-month period, if the consequences of such action cannot be precisely measured in order to assess damages. Early judicial intervention providing an adequate remedy by means of the court's power to enjoin further violations is therefore proper.

Furthermore, when it is difficult to assess damages it is more likely that the aggrieved union member will ultimately appear in a federal court to press a damage claim. Under New York law, which might apply in this case since the headquarters of the union are in New York and the appellant's membership contract might, therefore, be deemed to have been concluded in New York, the union might be free of liability in damages for the action of one of its officers in placing the appellant's name on the National Unfair List. See, e. g., Bingham v. Bessler, 1st Dept.1960, 10 A.D.2d 345, 199 N.Y.S.2d 681; but see Madden v. Atkins, 1958, 4 N.Y.2d 283, 174 N.Y.S.2d 633, 151 N.E. 2d 73. Only the federal court, therefore, would be able to provide a damage remedy, because of § 101(a) (5), for the effects of the disciplinary step taken without the minimum procedural safeguards. If it is probable that the union will grant no award or that its award will be so speculative that court proceedings will be instituted even after the remedies are exhausted, not even the policy calling for exhaustion in order to conserve judicial resources applies.

Moreover, it is by no means clear that the union's own rules afforded the appellant a remedy within the organization. The section of the union's constitution which relates to disciplinary proceedings (Article XVII) authorizes fines, censure, suspension, or expulsion pursuant to a hearing and determination made by the Board or Executive Committee of the union. An appeal may be taken from such a decision to the next following annual or special convention of the union. No provision is made anywhere for any proceeding either before or after the printing of a member's name on the National Unfair List. The union maintains that Article XX of its Constitution, entitled "Claims of Members," provides a means for reviewing the correctness of this sanction. The constitution's separate provision for disciplinary proceedings in Article XVII, however, suggests that Article XX was not intended to provide an alternate procedure for review of a union's sanctions against its members, but merely to grant a forum for other monetary claims against the union. Moreover, after the arbitration award the appellant notified the Western Regional Director of the union by telegram that he intended "appealing to the National Board," and was told in a reply letter that "the decision of the arbitrators is final and * * * you cannot appeal this to the National Board of AGVA." Although this response referred not to the disciplinary measure but to the arbitrators' decision, neither that letter nor the later notification that he was being placed on the National Unfair List notified the appellant that any specific review procedure was available. Thus, an attempt to proceed under Article XX might not have proved futile, but it would have been quite uncertain. When asserting what is clearly a violation of a federal statute, a union member should not be required to first seek out remedies which are dubious. Only resort to those expressly provided in the union's constitution or those clearly called to his

attention by the union officials should be demanded of him.

Taking due account of the declared policy favoring self-regulation by unions, we nonetheless hold that where the internal union remedy is uncertain and has not been specifically brought to the attention of the disciplined party, the violation of federal law clear and undisputed, and the injury to the union member immediate and difficult to compensate by means of a subsequent money award, exhaustion of union remedies ought not to be required. The absence of any of these elements might, in light of Congressional approval of the exhaustion doctrine, call for a different result. The facts of this case, however, warrant immediate judicial intervention.

Nor can we agree with the union's claim that the listing of the appellant's name did not constitute discipline within the meaning of § 101(a) (5). If a union such as the AGVA undertakes to enforce the contracts made by its members with employers, it does so because such enforcement is to the ultimate benefit of all the members, in that it promotes stability within the industry. A breach of contract or a refusal to abide by an arbitration award, therefore, is not damaging merely to the employer but to the union as well, and the union's listing of those of its members who do violate their contracts is an act of self-protection. In thus furthering its own ends the union must abide by the rules set down for it by Congress in § 101(a) (5), and any member against whom steps are taken by the union in the interest of promoting the welfare of the group is entitled to these guarantees.

In passing on the motions for summary judgment and for a temporary injunction, the district court had before it only the complaint and the affidavits of the appellant and various officers of the union. The undisputed facts of the case require that a temporary injunction issue ordering the union to remove the appellant's name from its Unfair List where it is now retained in apparent violation of § 101(a) (5).

We reverse the order of the district court dismissing the complaint and remand the case with instructions to grant the temporary injunction requested by the appellant.