Paul J. SHERIDAN

v.

**UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS, LOCAL 626.**

Civ. A. No. 2281.

United States District Court
D. Delaware.

Jan. 9, 1961.

On Motion for Preliminary Injunction
Feb. 14, 1961.

348

Joseph T. Walsh, Wilmington, Del., for plaintiff.

Joseph Donald Craven, Wilmington, Del., for defendant.

EDWIN D. STEEL, Jr., District Judge.

■ The Court: The plaintiff Sheridan, who has been suspended as a member of and removed from the office of business agent of the defendant union, has sued to be reinstated in office and for back pay and employment benefits. In the interim, plaintiff has moved for a temporary restraining order to enjoin the holding of a meeting of the union membership called for 3:00 p. m. on January 6, 1961, for the purpose of electing a temporary business agent to act while the validity of plaintiff's removal from office can be finally determined. The motion will be granted for the following reasons:

The validity of the election depends upon whether Sheridan was rightly removed from office as business agent. If he was not then no valid election can be held. Upon the record before me it appears reasonably probable that Sheridan will ultimately succeed in establishing that he was improperly removed from office. I say this for the following reasons:

■ Sheridan's removal appears to have been based primarily on the fact that he successfully prosecuted in the Municipal Court one Burke, a fellow member of Local 626, for an assault and battery which Burke committed upon Sheridan on union property. The disciplinary action of the union in removing Sheridan from office followed. This action was in contravention of the Labor-Management Reporting and Disclosure Act of 1959, more specifically 29 U.S.C.A. §§ 411(a) (4) and 529. The latter section provides:

"It shall be unlawful for any labor organization * * * to * * * discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."

Section 411(a) (4) vouchsafes to a member of a labor organization the right to institute an action in any court. It states:

"No labor organization shall limit the right of any member thereof to institute an action in any court, * * * *"

In causing an action to be instituted against Burke, Sheridan exercised a right which was guaranteed to him by Section 411(a) (4); yet because of his action he was removed from office as business agent, thus the plain terms of Section 529 were violated.

On December 7, 1960, Sheridan, as a member of the union, was subject to a suspension order. Accordingly, he was not eligible to be nominated to the office of temporary business agent when the nomination for that office took place. Sheridan had been apparently suspended as a member of the defendant because of his prosecution of Burke in the Municipal Court. Here, again, disciplinary action was taken against Sheridan by the union in derogation of 29 U.S.C.A. §§ 411(a) (4) and 529.

The most serious question at the present time is whether the instant action is premature. While Section 411(a) (4) prohibits a labor organization from limiting the right of a member from instituting action in any court, a proviso in that same section states that:

> "Any such member may be required to exhaust reasonable hearing procedures (but not to exceed a 4-month lapse of time) within such organization, before instituting legal * * * proceedings against such organizations or any officers thereof."

The union contends that Sheridan was required to exhaust hearing procedures available to him within the union before instituting the present action, and bases its contention on Section 56(A) of the union Constitution and By-laws which provide:

> "A member must exhaust all resources allowed by the Constitution and Laws of the United Brotherhood before taking a case to the civil courts."

The union grievance procedure provided in the union Constitution and By-laws insofar as it relates to the Sheridan-Burke controversy contemplates the following steps:

First, the filing of charges.

Second, the trial of the charges before a trial committee.

Third, an appeal to the General President within 30 days from an adverse decision by the trial committee.

Fourth, an appeal to the Executive Board within 30 days from an adverse decision by the General President.

Fifth, a final appeal to the General Convention within 30 days from any adverse decision by the Executive Board.

Not until all of these steps have been taken can a member be said to have exhausted all resources allowed by the Constitution and Laws as Section 56(A) requires. The Constitution and Laws fix no time limit for the rendition of a decision by either the trial committee or by any of the appellate bodies. The General Convention, which has final appellate jurisdiction, meets only every four years.

■ Burke filed two charges against Sheridan on October 5, 1960. The first was that Sheridan in derogation of Section 43(1) of the union's Constitution and Laws, committed a willful act by which the reputation of a fellow member, Burke, was injured or his employment jeopardized. The reference was obviously to the action which Sheridan caused to be brought in the Municipal Court. The second charge was that in violation of Section 56(A) of the union's Constitution and Laws Sheridan failed to exhaust all grievance resources allowed by the Constitution and Laws before proceeding in the Municipal Court against Burke. This contention was obviously unsound. Section 411(a) (4) authorizes a union to require a member to exhaust reasonable hearing procedures only before instituting legal proceedings against a labor organization or an officer thereof. The action in the Municipal Court was not against a labor organization or an officer thereof, but simply against a member. Accordingly, there is nothing in Section 411(a) (4) or any other portion of the Labor-Management Reporting and Disclosure Act of 1959 which would author-

ize the union to adopt a provision requiring Sheridan to exhaust resources within the union before prosecuting Burke in the Municipal Court. Furthermore, Section 56(A) of the Constitution and Laws of the union requires a member to exhaust union resources only as a condition to taking a case to the "civil courts." Jurisdiction of the Municipal Court in entertaining the assault and battery charge against Burke was not civil in nature.

On November 2, 1960, the trial committee sustained Burke's charges, found Sheridan guilty as charged, and removed him from office. On November 9, 1960, Sheridan appealed. The appeal was heard on November 30th by Rawleigh Rajoppi, the union President's designee to determine the appeal. No decision has been forthcoming from Rajoppi, although on December 8, 1960, he advised Walsh, Sheridan's attorney, that a decision on the appeal would be made in a few days.

■ From the foregoing it is apparent that although Sheridan has done everything within his power to exhaust the grievance procedures provided by the Constitution and Laws, Rajoppi's inaction in deciding the appeal and the very nature of the appellate procedure itself, involving as it does the successive steps which I have enumerated, have precluded Sheridan from exhausting the grievance procedures prior to the time when the election will be held.

The union argues that Sheridan has failed to validly appeal the decision from the trial committee because he has neglected to make an affidavit "as to the truth of (his) written or printed statements" as required by Section 57(G) of the Constitution and Laws. It is true that the notice of the appeal dated November 9th is not verified, but Section 57(G) does not in terms state that the notice of appeal has to be verified, and there is nothing before me to indicate that to the extent that a verification is required in connection with an appeal it has not been supplied. It is noteworthy that the union itself has treated the appeal as valid. Rajoppi, the appeal officer, heard evidence on the appeal, and he assured Walsh a decision would be forthcoming. In the light of this evidence I cannot find that the action taken by Sheridan in connection with the appeal was fatally infirm.

Now, it is to be noted that although Section 411(a)(4) authorizes a union to require a member to exhaust hearing procedures (not to exceed a 4-month lapse of time) before instituting an action in any court, the hearing procedures must be "reasonable". That is what the statute says. Here, with Sheridan's appeal undecided by Rajoppi, it is obvious that Sheridan cannot possibly exhaust the procedures provided by the union prior to the time when the election is to take place on January 6, 1961. In the circumstances the hearing procedures are unreasonable. If their existence is permitted to bar the institution of this action Sheridan would find himself without a remedy either within the union or before a judicial tribunal prior to the time when the election is held.

Under somewhat comparable circumstances in Johnson v. Local Union No. 58, International Brotherhood of Electrical Workers, D.C.E.D.Mich.1960, 181 F. Supp. 734, it was held that the hearing procedure provided by the union was unreasonable and hence ineffective to bar the institution of civil litigation.

Accordingly, I find that Section 56(A) of the Constitution and Laws which requires a member to exhaust all resources within the union before taking a case to the civil courts is invalid in its application to the instant case as being unreasonable in its operation.

In summary, it appears to be reasonably probable that plaintiff was wrongfully removed from office as business agent of the defendant, and hence that the election about to be held will be invalid; that plaintiff was wrongfully suspended as a member of the defendant and hence if the election could be validly held plaintiff has been wrongfully deprived of his right to be nominated for election; and that for these reasons unless a re-

straining order is issued directed against the holding of such an election plaintiff will be irreparably injured and damaged.

On Motion for Preliminary Injunction.

Plaintiff, a member of the defendant union, was removed from office as Business Agent for having brought a criminal action in the Municipal Court against a fellow member. Plaintiff has sued to be reinstated and to recover his wages and employment benefits which have accrued since his removal. On January 6, 1961, for the reasons stated in an oral opinion of that date, a temporary restraining order was issued which enjoined the union from holding an election of a temporary Business Agent on January 6, 1961 to fill the office which the plaintiff had occupied. Plaintiff's motion for a preliminary injunction for an extension of that injunctive relief is now before the Court. Despite the fact that plaintiff has not prayed for a permanent injunction, if after trial it is determined that plaintiff is entitled to be reinstated, then it would seem appropriate under Rule 54(c), 28 U.S.C.A., to permanently enjoin the holding of any election of a temporary Business Agent prior to June 17, 1961 when plaintiff's term of office expires.

Defendant attacks the jurisdiction of the Court to grant a preliminary injunction upon two grounds:

First, it argues that § 402 of the Labor-Management and Disclosure Act of 1959, 29 U.S.C.A. § 482, provides an exclusive remedy for determining the validity of an election, providing as it does for procedures before the Secretary of Labor for testing and setting aside elections after they have been held. The only grounds upon which an election can be attacked under § 402 are those specified in § 401, 29 U.S.C.A. § 481. Plaintiff makes no claim that § 401 has been violated. He asserts that when the union removed him from office as a disciplinary measure because he had brought criminal proceedings against a fellow member—a right guaranteed to him by § 101(a) (4), 29 U.S.C.A. § 411(a)

(4)—the union violated § 411(a) (4) and § 609, 29 U.S.C.A. § 529; and, since his removal was illegal, no vacancy exists to be filled. These charges, if substantiated, will provide plaintiff with no remedy under § 402. In Johnson v. San Diego Waiters & Bartenders Union Local 500, D.C.S.D.Cal. 1961, 190 F.Supp. 444, 47 L.R.R.M. 2450, the court, holding that § 402 provided a union member with an exclusive remedy, refused to enjoin a union election at the behest of the member. But the basis of attack upon the election—unlike that before the Court—was a violation of § 401. The holding in Flaherty v. McDonald (International Union, United Steelworkers of America, AFL-CIO), D.C.S.D.Cal., 183 F.Supp. 300, 46 L.R.R.M. 2483 that plaintiff's only remedy was under § 402 is similarly without pertinence since the case involved a violation of § 401.

Section 102 provides that any person whose rights secured by the provisions of Title I have been infringed by any violation of that Title may bring a civil action in a district court of the United States for appropriate relief, including injunctions. Section 101(a) (4), which is a part of Title I, prohibits labor organizations from limiting the right of members to sue. In so providing § 101 (a) (4) secures to union members that right. When the defendant removed plaintiff as Business Agent because of his Municipal Court suit, it thereby placed a limitation on a right secured to him by § 101(a) (4) and defendant violated that Section. Without more, this provides a jurisdictional basis for this court entertaining the action.

In addition, § 609 makes it unlawful for a labor organization

"to fine, suspend, expel, or otherwise discipline any of its members for exercising any rights to which he is entitled under the provisions of the Act."

Section 609 states that the provisions of § 102 shall be applicable to the enforcement of § 609. Inasmuch as plaintiff was removed from office to discipline him

for having caused a suit to be brought against a fellow member—despite the fact that such right was secured to him by § 101(a) (4)—jurisdiction is likewise supplied by the joint operation of § 609 and § 102.

Defendant points out that as Business Agent of the union plaintiff receives $200 a week salary and hence is an "employee" of the union. It argues that § 609 has application only if a union member, as distinct from a union employee, has been "fined, suspended, expelled, or otherwise disciplined" and that plaintiff, who has been removed as an employee, can assert no rights under § 609. Defendant's argument can be made with equal, if not greater, force if plaintiff is considered to have been an officer of the union at the time of his removal, as seems to be the fact.[1]

In providing in § 101(a) (5), 29 U.S.C.A. § 411(a) (5), that no member of a labor organization may be "fined, suspended, expelled, or otherwise disciplined" without the observance of specified procedural safeguards, Congress used language identical to that found in § 609.[2] Conference Report No. 1147, 2 U.S.Code Congressional & Administrative News 1959, p. 2504, explains the procedural safeguard section of the law by stating:

"the prohibition on suspension without observing certain safeguards applies only to the suspension of

membership in the unions; it does not refer to suspension of a member's status as an officer in the union."

Because of the identity in the language in §§ 101(a) (5) and 609 it may be assumed that the limitation intended by each section is the same. But despite this, plaintiff still comes under the protection of § 609. Plaintiff was charged with misconduct as a member of the union, his hearing was based upon that charge, and when the charge was sustained he was removed from office. As a union member, plaintiff was not fined, suspended or expelled.[3] But as a member, plaintiff was disciplined. The discipline to which plaintiff as a member was subjected was removal from office as Business Agent. The removal was not occasioned by any asserted malfeasance in office. The record contains no suggestion that plaintiff failed to carry out his duties as Business Agent in an exemplary manner. Plaintiff's removal from office was the disciplinary measure adopted because of the Trial Committee's finding that plaintiff, as a member, had caused the Municipal Court action to be instituted against a fellow member. This is a type of union action which § 609 was designed to secure a member against.

The fact that plaintiff was disciplined for misconduct as a member and not because of his official misconduct as Busi-

---

1. Section 3, 29 U.S.C.A. § 402(n) defines an "officer" of a union as, among others, "any member of its executive board or similar governing body."

   As stipulated by the parties in a letter addressed to the Court, Article IV of the By-laws of Local 626 states in § 1 that the Business Representative shall be a member of the executive committee.

   Defendant's argument that plaintiff was not an officer rests on the fact that a Business Agent is not included among the officers named in the Constitution and Laws of the United Brotherhood to which defendant as a local is subordinate.

2. It provides, 29 U.S.C.A. § 411(a) (5):
   "Safeguards against improper disciplinary action.—No member of any labor organization may be fined, sus-

pended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

3. Plaintiff was temporarily suspended as a union member as appears from my prior opinion. However, since the evidentiary status with respect to such suspension is different from that before the Court when the application for the temporary restraining order was heard, that aspect of the matter is not the subject of this opinion.

ness Agent makes inapposite such cases as Strauss v. International Brotherhood of Teamsters, etc., D.C.E.D.Pa.1959, 179 F.Supp. 297, Jackson v. Martin Co., D.C. D.Md.1960, 180 F.Supp. 475, and Allen v. Armored Car Chauffeurs and Guards, etc., D.C.D.N.J.1960, 185 F.Supp. 492, 494.

█ Once a court has obtained jurisdiction of a cause of action, it is entitled to retain the action and to grant complete relief as to any matter which is incidental thereto, even though the court may not have had jurisdiction over such auxiliary matter if it had been asserted as an independent cause of action. Under this principle, it is not necessary to find an independent jurisdictional basis for the injunctive aspect of the case. The injunction which plaintiff seeks against the election of a temporary Business Agent is but an incident to plaintiff's primary claim that his removal from office was violative of §§ 101(a) (4) and 609 as to which, as previously stated, the jurisdiction of the court is clear.

█ The second jurisdictional attack is the asserted failure of the plaintiff to exhaust his remedies within the union; specifically that he failed to appeal from the action of the Trial Committee which suspended him from office. Section 56G of the Constitution and Laws of the union provides that a member must exhaust his grievance resources within the union before taking the case to the civil courts. Detailed grievance procedures consisting of 5 separate steps are set forth in the Constitution and Laws, the last of which cannot take place until 1962.[4] The exhaustion of remedy requirement of § 56G is in conflict with § 101(a) (4). Section 56G is not saved by the *proviso* in § 101 (a) (4) which reads:

"*Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a 4-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof:"

The *proviso* confers no right upon a union to demand that internal remedies be completed before court action can be begun by a member in a federal court. Nor does the *proviso* impose an absolute duty upon a member to seek relief within the union before applying to a federal court. The *proviso* means only that a member who attempts to institute proceedings before a federal court *"may be"* required *by that court* to exhaust reasonable internal remedies of less than 4 months duration before invoking the court's assistance. Detroy v. American Guild of Variety Artists, 2 Cir., 286 F.2d 75.

█ The hearing procedures available to plaintiff could not be exhausted within the 4-month period of the § 101 (a) (4) *proviso*. Despite some intimation to the contrary in my prior opinion, this does not make the hearing procedures unreasonable *per se* or resolve the question of the extent, if any, to which the plaintiff should be judicially required to resort to them before beginning suit. If hearing procedures are available to a member within the 4-month period and there is no pressing need for a prompt adjudication of his rights, it is reasonable that he should be required to utilize those procedures during the entire 4-month period even though final union

4. The union grievance procedure provided in its Constitution and Laws contemplates the following steps:
    First, the filing of charges.
    Second, the trial of the charges before a Trial Committee.
    Third, an appeal to the General President within 30 days of an adverse decision by the Trial Committee.
    Fourth, an appeal to the Executive Board within 30 days of an adverse decision of the General President.
    Fifth, a final appeal to the General Convention within 30 days of an adverse decision of the Executive Board.
    The General Convention meets every 4 years and, as was stated by the union at the argument, its next meeting is in 1962.

appellate review within the 4-month period is impossible. But if the circumstances are such that the protection of a member's rights demands prompt judicial action, it would be unreasonable to deny the member access to a federal court, if the court otherwise had jurisdiction of the controversy, and to require the member to pursue his remedy within the union for the entire 4-month period. Otherwise a union member confronted with the need for immediate protection within the 4-month period and having union grievance procedures still open to him would be helpless to obtain timely relief from the union or from the court. The point to which a court should compel a member to go in seeking relief within the union before resorting to a federal court cannot be determined as an abstract matter, but only as it relates to the circumstances of a given case. Detroy v. American Guild of Variety Artists, supra, 286 F.2d 75. While state court decisions such as Allander v. Carpenters District Council of Denver and Vicinity, Colo.1960, 358 P.2d 8, 47 L.R.R.M. 2464 may suggest helpful avenues of approach, they are not controlling, and the federal courts may develop their own principles as to the time when judicial intervention is justified. Detroy v. American Guild of Variety Artists, supra, 286 F.2d 75.

The Trial Committee suspended the plaintiff from his office as Business Agent on November 2, 1960. The election of his successor was called for January 6, 1961. In the interim reasonable hearing procedures were available to plaintiff within the union and there was nothing which demanded an immediate decision. Unless plaintiff availed himself of the opportunity to appeal from the decision of the Trial Committee, § 101(a) (4) is a bar to the prosecution of the present action. Whether or not such an appeal was taken must therefore be determined.

On November 9, 1960, seven days after his suspension, plaintiff wrote what it characterizes as a "letter of appeal" to the General President. The defendant asserts that the letter was not an appeal but simply a protest, and that in any event it was defective because it was not notarized in accordance with § 57G of the Constitution and Laws.

Section 57D of the Constitution and Laws provides for the manner in which an appeal is to be taken. It states that:

"Any member of subordinate body of the Brotherhood desiring to take an appeal shall have such appeal made in duplicate. One copy shall be forwarded to the General President and the other copy served on the member or subordinate body against whom the complaint is made within 30 days after the date of the action or grievance complained of."

Section 57G provides:

"All parties to an appeal to the General President are required to come before a notary public and make affidavit to the truth of their written or printed statements."

Reading Sub-paragraphs D and G together and considering their relationship to Section 57 in its entirety, the "written or printed statements" which Sub-paragraph G requires to be notarized are those submitted in connection with the hearing on the merits and they do not include the paper which initiates the appeal.

It is true that the letter of November 9, 1960 simply "protests" the action "at the meeting of Local No. 666, held on November 2, 1960". It says nothing about an "appeal" or about the action of the "Trial Committee". Furthermore, it concludes by asking that the General Office "take over" the local union.

Despite the arguable ambiguity of the letter of November 9, 1960 as an appeal, Paragraph 11 of the verified complaint alleges that Rajoppi, a member of the National Board of the Carpenters Union, was designated by the President of the national union (the General President) to determine Sheridan's appeal. This allegation is not denied. Rajoppi's statement in his affidavit of January 12, 1961 that he was assigned by the General

President to investigate conditions in Local 626 because of a petition which had been signed by the plaintiff and 29 other members, is not inconsistent with his designation by the General President to hear the Sheridan appeal. The affidavits of Rajoppi and Walsh are in conflict as to what was said between them on December 6, or December 8, or both, concerning the election of a temporary successor to the plaintiff and with respect to the time when a decision on the appeal would be rendered.[5] Both affidavits, however, disclose that plaintiff's "appeal" was discussed, and so far as appears from the affidavits, its validity was in no way challenged by Rajoppi. These actions and statements by Rajoppi do not, of course, constitute an admission by the defendant that an effective appeal was taken or estop the defendant to deny the validity of the appeal. Nevertheless, the recognition by Rajoppi that the "letter of appeal" was effective to initiate an appeal confirms this Court's view that a liberal attitude should be adopted to sustain an appeal rather than a technical attitude to defeat it, particularly as in many, if not most instances, the members who prepare and file them are not technically trained draftsmen.

The fact that the attorney for the defendant attempted unsuccessfully to get a copy of the "appeal" from plaintiff and from Rajoppi is not important. A copy was sent to the union when it was filed with Rajoppi. This is all that Section 57D of the Constitution and Laws required.

Based upon the foregoing evidence, it is the Court's view, at this juncture of the case at least, that the letter of November 9, 1960 from the plaintiff to the General President initiated an appeal. Contrary to the situation which prevailed when the application for a temporary restraining order was heard, the papers now before me present a fact issue as to whether a hearing on the appeal has taken place. But regardless of what the ultimate truth may prove to be about

this, there is presently nothing before the Court to indicate that plaintiff failed to do all that was required of him to attempt to exhaust the hearing procedures available to him prior to beginning his present suit.

Plaintiff's term of office expires on June 17, 1961. He desires thereafter to run for re-election. If the union is permitted to elect a temporary Business Agent at this time it will appear to the rank and file of the union members that the union is ratifying the action of its officers in removing plaintiff from office. His standing in the eyes of the membership will be impaired and his candidacy for re-election jeopardized. In short, he will be irreparably injured and damaged. Rarick v. United Steelworkers of America, D.C.W.D.Pa.1960, 190 F.Supp. 158, 47 L.R.R.M. 2343 held that a union member whose candidacy for office was suppressed would not be irreparably injured by the holding of an election, since § 402 provided him with a right of review after the election. Since § 402 does not provide the plaintiff at bar with a post election remedy, Rarick has no bearing upon the irreparable injury question.

A balancing of convenience of the parties likewise supports the issuance of the injunction. The office from which the plaintiff has been removed has already been filled by a temporary successor, and so far as appears, the failure to hold an election at this time will not impair the operations of the union.

Sections 101(a) (4) and 609 of the Labor-Management Disclosure Act of 1959, when read together, make it unlawful for a labor organization to discipline any of its members for instituting an action in court. Despite this proscription, defendant removed plaintiff from office as Business Agent because of the court action which he instituted. The action of the union was clearly unlawful. The injury with which plaintiff is threatened is imminent and irreparable. Plaintiff has taken all reasonable steps

---

5. Rajoppi's affidavit refers to a December 6 meeting; Walsh's affidavit refers to a December 8 meeting.

**356**

available to him within the union before he was confronted with the election of a temporary successor and he began this action. There is no reason why plaintiff should be required to do more.

A preliminary injunction will issue.

The statements herein contained constitute the findings of fact and conclusions of law required by F.R.Civ.P. 52 (a).