**Welford WIGLESWORTH, Jr., Appellee,**

**v.**

**TEAMSTERS LOCAL UNION NO. 592, William A. Hodson, President of Teamsters Local Union No. 592, Appellants.**

**No. 75–2191.**

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1976.

Decided Nov. 12, 1976.

Certiorari Denied June 6, 1977.

See 97 S.Ct. 2676.

See also 68 FRD 609.

Jay J. Levit, Richmond, Va. (Stallard & Levit, Richmond, Va. on brief), for appellants.

Gregory M. Murad and Stephen Daniel Keeffe, New York City (Keeffe Brothers, New York City, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, CRAVEN, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge.

The plaintiff, Welford Wiglesworth, Jr., a member of Teamsters Local Union No. 592 (Local), filed this action pursuant to Section 102 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 412,[1] alleging that the Local and its president, William A. Hodson, had violated certain of his rights under the Act. Specifically, the complaint charges that during two meetings of Local No. 592, Hodson prevented the plaintiff from exercising his rights of freedom of speech, refused to give him information on the financial affairs of the Local, and denied his request that the Union membership be informed of their rights under LMRDA. The district court found in favor of the plaintiff and entered an order granting injunctive relief and awarding compensatory damages in the amount of $13,000.00, attorney fees of $19,000.00 and costs and expenses in the amount of $2,797.86. The defendants have appealed.

The evidence disclosed a deep and long-standing hostility between Wiglesworth and the defendant Hodson. In 1972 the plaintiff had run against Hodson for president of the Local and had been defeated. Wiglesworth disputed the election, and after an unsuccessful pursuit of administrative appeals within the Union, he filed a complaint with the Department of Labor under Title IV[2] of the LMRDA. The Department found probable cause to believe that there had been violations of Title IV, whereupon the Local agreed to conduct a new election under the supervision of the Secretary of Labor. In the rerun election Hodson was again successful, the plaintiff running last in a field of three candidates for the office.

The evidence presented to the district court focused upon two meetings of the Local, the first of which was held on September 8, 1974. The principal item on the agenda of that meeting was a proposal to increase the Union dues. Wiglesworth spoke in opposition to the proposed increase, and he testified that his discussion was cut short and he was ruled out of order by Hodson who was the presiding officer. Thereafter, the plaintiff requested certain financial data in addition to the routine report, and also asked that Hodson advise the members of their rights under LMRDA. Both of these requests were denied. At the second meeting on October 13, 1974, Wiglesworth attempted to raise a point of order relative to the eligibility of shop stewards to vote. Hodson declined to pass upon this question and once again refused Wiglesworth's request for financial data and advice to the members of their LMRDA rights. Members of the Local who testified at the trial differed as to whether Wigles-

---

1. Section 102 provides that:

"Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. * * *"

2. 29 U.S.C. §§ 481–483.

worth was given a fair opportunity to speak at the two meetings.[3] Hodson testified that Wiglesworth's behavior at the meetings was highly disruptive, and that the financial data requested by him would have been made available at the Union hall upon reasonable notice. Hodson also said that the LMRDA rights were delineated in the Local Bylaws, copies of which were available to the members. On the other hand, Glen F. French, who was Secretary-Treasurer of the Local at the time of the meetings, testified that in his opinion Wiglesworth was improperly called out of order.

Wiglesworth did not seek a settlement of his dispute through the grievance procedures as required by the Constitution of the International Union, and the primary question upon this appeal is whether the district court erred in denying the motion of the defendants to dismiss the complaint because of the failure of the plaintiff to exhaust the available internal Union remedies.[4]

The qualified limitation on the jurisdiction of federal courts in suits brought under Section 102 of the LMRDA is set forth in Section 101(a)(4), 29 U.S.C. § 411(a)(4):

> "No labor organization shall limit the right of any member thereof to institute an action in any court, * * * *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative

proceedings against such organizations or any officer thereof * * * *."

While Section 101 has its doctrinal roots in the common law,[5] it is an expression of Congressional labor policy that places upon the federal courts "the duty to formulate federal law regarding a union member's obligation to exhaust the internal union remedies before seeking judicial vindication of those rights." *Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 79 (2 Cir. 1961). In *Detroy* the relevant policy considerations were stated as follows:

> "The Congressionally approved policy of first permitting unions to correct their own wrongs is rooted in the desire to stimulate labor organizations to take the initiative and independently to establish honest and democratic procedures. See Cox, The Role of Law in Preserving Union Democracy, 72 Harv.L.Rev. 609, 615 (1959). Other policies, as well, underlie the exhaustion rule. The possibility that corrective action within the union will render a member's complaint moot suggests that, in the interest of conserving judicial resources, no court step in before the union is given its opportunity. Moreover, courts may find valuable the assistance provided by prior consideration of the issues by appellate union tribunals." *Id.*

The court went on to observe, however, that "if the state of facts is such that immediate judicial relief is warranted, Congress' acceptance of the exhaustion doctrine

---

**3.** Wiglesworth might fairly be characterized as an activist. He candidly testified that he had personally voiced his complaints against the Local's leadership to some 1800 of the 2800 members, and had distributed literature expressing his views, including a reproduction of the complaint filed in the present case. During the trial in the district court Wiglesworth's counsel described him as "a knowledgeable, creative, vibrant personality," stating further "you bring up a topic in a Union meeting and Welford Wiglesworth is going to comment on it. * * * He is troublesome. He opposes things; he has his own point of view, makes points of order." APP. Vol. II, 860.

**4.** The Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen

and Helpers of America, Article XIX, Section 12(a) provides:

> "Every member, officer, elected Business Agent, Local Union, Joint Council or other subordinate body against whom charges have been preferred and disciplinary action taken as a result thereof, or against whom adverse rulings or decisions have been rendered or who claims to be aggrieved, shall be obliged to exhaust all remedies provided for in this Constitution and by the International Union before resorting to any court, tribunal or agency against the International Union, any subordinate body or any officer or employee thereof."

**5.** See the discussion in Summers, *The Law of Union Discipline: What the Courts Do in Fact*, 70 Yale L.J. 175, 209 (1960).

as applied to the generality of cases should not bar an appropriate remedy in proper circumstances,"[6] and it is well settled in our own circuit, as well as others, "that internal union remedies need not be exhausted where the action taken by the Union is 'void'". *Simmons v. Avisco, Local 713, Textile Workers Union*, 350 F.2d 1012, 1016 (4 Cir. 1965); *Eisman v. Baltimore Reg. Joint Bd. of Amal. Cloth. Wkrs.*, 352 F.Supp. 429, 434 (D.Md.1972) *aff'd* 496 F.2d 1313 (4 Cir. 1974).

In denying the defendant's dismissal motion in the present case, the district judge placed primary reliance upon *Eisman*, a case in which the court applied the doctrine of voidness to a "situation in which 'conceded or easily determined facts show a serious violation of the plaintiff's rights' such as to amount to a denial of fundamental fairness." 352 F.Supp., at 434. In *Eisman* the plaintiff had been expelled from the union upon charges of which he had received no notice prior to a disciplinary hearing and the decision of the district court in that case was consonant with our observation in *Simmons v. Avisco, Local 613, Textile Workers Union, supra*, that the courts had applied the concept of voidness "to proceedings where no proper notice was given, where the tribunal was biased, where the offense charged was not one specified in the union constitution or where there have been other substantial jurisdictional defects or a lack of fundamental fairness." 350 F.2d, at 1017.

■ Both *Eisman* and *Simmons* quoted from Judge Lumbard's opinion in *Libutti v. Di Brizzi*, 337 F.2d 216 (2 Cir. 1964), *aff'd on reh.* 343 F.2d 460 (2 Cir. 1965), but the quoted language must necessarily be read in the light of his complete observation on the subject:

"Voidness is an elastic concept. Because it is tied up with the merits of the claim, its indiscriminate application could reduce the exhaustion requirement to the tautology that a plaintiff can find present relief in the courts only if his claim has legal merit. * * * That this

is a danger, however, does not mean that it is an inevitable result of applying the exception. When conceded or easily determined facts show a serious violation of the plaintiff's rights, the reasons for requiring exhaustion are absent: the commitment of judicial resources is not great; the risk of misconstruing procedures unfamiliar to the court is slight; a sufficient remedy given by the union tribunal would have to approximate that offered by the court. Where, as in this case, conceded facts show a serious violation of a fundamental right, we hold that plaintiffs need not exhaust their union remedies." 337 F.2d, at 219.

It is readily apparent that the present case does not satisfy the criteria which would justify the application of the voidness concept explicated in *Libutti*. The facts necessary to show a serious violation of Wiglesworth's rights were neither conceded nor easily determinable; and consideration of the conflicting evidence required a substantial commitment of judicial resources and an excursion by the court into the relatively unfamiliar field of internal union procedures.

Wiglesworth has not been expelled or suspended from the union, and his complaint, at best, charges departures from the basic rules of orderly, democratic, parliamentary procedures by the president of the local union. In this respect, his case is quite similar to *Harris v. International Longshoremen's Asso., Local 1291*, 321 F.2d 801, 805 (3 Cir. 1963), where the court, in holding that exhaustion was necessary, stated:

"The proviso of section 101(a)(4), that a 'member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time)', reflects an effort to encourage mature, democratic self-government of labor organizations through the development of internal procedures for the correction of abuses by union officials and at the same time to provide reasonably expeditious judicial relief to union members who have

6. *Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 79 (2 Cir. 1961).

been denied the fundamental rights guaranteed by Title I of the L.M.R.D.A."

■ The district court also concluded that exhaustion was not required in this case since for Wiglesworth the "internal grievance procedures would have been futile." The court's conclusion on this point was based primarily upon the plaintiff's experience with the internal union grievance procedures incident to his unsuccessful contest with Hodson in the 1972 Local election. However, under the International Constitution two routes were open to Wiglesworth and in neither of these would Hodson have participated in the decisional process. First, Wiglesworth could have brought charges against Hodson before the Local Executive Board[7] which is composed of the officers of the Local and three trustees. There is nothing to indicate that such a forum would not have granted Wiglesworth a fair hearing since under the Union procedure French, as Secretary-Treasurer, would have been called upon to appoint a substitute for Hodson in the hearing. In view of French's even-handed testimony at the trial of this case there is no suggestion that he would have been prejudiced against

Wiglesworth in any way, or would have appointed a substitute for Hodson who would have been anything other than fair and impartial. Under this administrative route an adverse decision at the first level could have been appealed to the Executive Board of the Joint Council and, if necessary, from there to the International General Executive Board.[8]

The other option open to Wiglesworth was to bring charges against the Local before the Executive Board of the Joint Council.[9] An adverse decision before the Council could have been appealed to the International General Executive Board and from there to the International Convention.[10]

■ In our opinion, the out-of-hand rejection of these internal procedures flies in the face of the philosophy underlying the LMRDA. "Democratic processes atrophy when they are not exercised; union members will have no interest in improving their organizations' internal adjustment procedures if they never are required to use them."[11] It should be borne in mind that the requirement of exhaustion under Section 101 is merely a threshold step for en-

---

7. International Constitution, Art. XIX, reads in pertinent part:

"Section 1(a). A member or officer of a Local Union charged by any other member of the Local Union with any offense constituting a violation of this Constitution, shall, unless otherwise provided in this Constitution, be tried by the Local Union Executive Board. * * * If either the President or Secretary-Treasurer of the Local Union is charged or is *preferring the charges, or is unable to attend* the hearing for any reason, the other officer shall appoint the substitute.

   *   *   *   *   *   *

Section 2(a). In the event disciplinary action is taken against the accused, he or she may take an appeal from the decision of the Local Union Executive Board to the Executive Board of the Joint Council, if one exists; otherwise the appeal shall be taken to the *General Executive Board. Appeals from de-* cisions of the Executive Board of Joint Councils may be taken to the General Executive Board. * * *

   *   *   *   *   *   *

(e). Any party to a case, regardless of whether such party is the accused or not, being aggrieved of a decision rendered in the case shall be entitled to the same rights of

appeal as are hereinbefore provided for accused.

   *   *   *   *   *   *."

8. *Id.*

9. International Constitution, Art. XIX:

"Section 3(a). Whenever charges are preferred against a Local Union * * * such charges shall be filed in writing in duplicate with the Secretary of the trial body, and shall be served personally or by registered or certified mail on the Secretary-Treasurer of the Local Union or the Joint Council or other subordinate body so charged. If the charges are against the Local Union the trial shall be by the executive Board of the Joint Council * * *.

   *   *   *   *   *   *

(c). Appeals from decisions on charges against Local Unions * * * shall be taken to the General Executive Board and from it to the Convention. * * *."

10. *Id.*

11. Aaron, *The Labor-Management Reporting and Disclosure Act of 1959*, 73 Harvard L.Rev. 851, 869 (1960).

tree to the federal courts, and the four-month restriction provides ample protection against any abuse or undue delay in the Union's internal procedures. It occurs to us that it would be both unwarranted and unwise in a case such as this for the court to freely assume the position of post-parliamentarian for a local union meeting without first requiring exhaustion on the part of the plaintiff. As stated in *Gurton v. Arons,* 339 F.2d 371, 375 (2 Cir. 1964), "[t]he provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions."

Since we conclude that the plaintiff should have been required to exhaust his available union remedies before seeking redress in the district court, the judgment is reversed and the case remanded with directions to dismiss the complaint.

REVERSED and REMANDED WITH DIRECTIONS.