**KEEFFE BROTHERS, Appellants,**

John H. Johnson, Appellee,

v.

**TEAMSTERS LOCAL UNION NO. 592; Appellee.**

John H. JOHNSON, Appellee,

v.

**TEAMSTERS LOCAL UNION NO. 592, Appellant.**

Nos. 76–1531 and 76–1532.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1976.

Decided Sept. 12, 1977.

Gregory M. Murad, Washington, D. C. (Stephen Daniel Keeffe, Keeffe Brothers, Washington, D. C., on brief), for appellant in 76–1531.

Jay J. Levit, Richmond, Va. (Stallard & Levit, Richmond, Va., on brief), for appellee in 76–1531 and for appellant in 76–1532.

George Wm. Warren, IV, Richmond, Va. (Hall, Hall & Warren, Richmond, Va., on brief), for appellee in 76–1531 and 76–1532.

Before WINTER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

This appeal arises out of an action filed by the plaintiff John H. Johnson, a union member, to recover of the defendant Local Union, both damages and injunctive relief for an alleged violation of rights guaranteed under the Labor-Management Reporting and Disclosure Act.[1] From a judgment in favor of the plaintiff, the defendant has appealed. In connection with the entry of that judgment, attorney's fees as a part of the judgment against the appellant Local Union were allowed one of plaintiff's counsel but denied another. The latter has appealed that denial. We affirm the judgment against the Local Union in favor of the plaintiff but reverse the denial of attorney's fees and remand to the District Court for reconsideration of a reasonable attorney's fee allowable in favor of the appealing attorneys, to be included in the judgment awarded against the defendant Local Union.

The plaintiff in this action became a member of the Local Union in 1968, though he had earlier been affiliated with another Local of the same International from 1954 to 1961. While a member of the defendant Local, he was active in union affairs. In 1972 in particular, his positions on Local Union policy differed markedly from those of the then president of the Local Union and its Executive Board and he actively campaigned for an opponent of the president in his bid for re-election. He articulated his differences with the then officers of the Local both in and without union meetings. In order to silence the plaintiff at union meetings and to stifle any motions by him, the president of the Local, according to the plaintiff, denied him, while he was still an active member of the Local, the right either to speak or to make motions at the union meetings. Feeling frustrated by the repeated denials of his right to speak at or take any part in the Local's meetings, he said he applied in November, 1972, for and was issued by the Local Union an honorary withdrawal card.

Authorization for the issuance to members of the Local of "honorary withdrawal cards" is provided under Section 5, Article XVIII of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Constitution and By-laws. Under the Constitution all holders of such withdrawal cards are required to pay a maximum charge when the card is issued, and may under conditions continue to receive Local Union benefits. They, however, cannot vote at union meetings or hold union office but have such other rights to participate in union business as the Local's Executive Board shall permit. But—and this is the crucial provision in the National and Local Bylaws—they are entitled to "readmission to the Local Union from which this card was issued at any time, subject, however, to the provisions of subsection (e) of this Section" of the National Bylaws. Subsection 5(e) sets forth but three grounds on which readmission may be denied. They are:

(1) If the member has committed any offense injurious to union principles;

(2) If the member is liable to become a charge against the Local or International Union;

(3) If adverse employment conditions exist.

In early 1973, the plaintiff applied repeatedly for readmission and reinstatement as an active member of the Local Union under the terms of the Union's Constitution

1. 29 U.S.C § 411, *et seq.*

and Bylaws. He was advised following the filing of application for readmission in April, 1973, that he would have to make a "written request to appear before the Executive Board" before his request could be honored. One of plaintiff's witnesses testified that he was told by the Local's Secretary-Treasurer that if plaintiff would do this, there would be no difficulty about the latter's readmission. There was no denial by the Local's Secretary-Treasurer of this testimony. Assuming that the Secretary-Treasurer's statement was correct, the plaintiff followed the instructions given him by the Local Union, submitted a written application for readmission and appeared in support of his application before the Executive Board on May 13, 1973. The record of the meeting of the Executive Board does not indicate that at any time during the hearing was it stated that being presently "engaged in the craft" was a requirement for readmission as an active member of the Local on the part of the plaintiff. The hearing before the Executive Board seemed to deal with the question whether the plaintiff's withdrawal was "in good faith" and to what extent his difficulty in securing employment was due to his "not being an [active] member." At the conclusion of the meeting, he was told he would be later advised of the action taken by the Executive Board.

On May 15, 1973, a letter was written to the plaintiff, advising him that his request for readmission was denied and, in addition, "*that his honorable withdrawal card has been revoked.*" (Italics added) In denying the plaintiff readmission and in revoking his honorary withdrawal card, the Executive Board gave no reason for its action either in its minutes or in the letter written to the plaintiff, advising him of its action. The president of the Local did, however, give an explanation in his testimony of the reasons prompting and justifying the drastic action. He said:

"Well, he had—he (meaning the plaintiff) had been such a pain over the months because we wouldn't strike his employer and because he couldn't get his way at each meeting, that I guess my executive board, along with a lot of other rank and file members, felt that we had been better off without him."

Later, the president added to this explanation, saying:

"* * * he came before the Board. He wanted to turn in his withdrawal card and become a dues-paying member again. He was very belligerent. He abused some officers on the Board pretty badly and they, I guess, threw a temper tantrum and said, 'we'll not only not grant you that privilege but we'll just take your withdrawal card away from you too.'"

At another point in his testimony, the president, relying on § 5(e), offered an additional justification for the refusal to readmit the plaintiff. According to the president, the plaintiff had violated his "obligation to keep the affairs of the Local Union strictly private" by "in a public place of business [has] accuse[d] an officer of that Local Union of embezzling money."

It is obvious from these explanations that the action of the Local in refusing readmission and revoking his withdrawal card, was to penalize plaintiff for his exercise of the right to speak and take part in union meetings as well as to exercise his right of free speech about union affairs in public. There was in these explanations no reference to any of the reasons for denying readmission enumerated in subsection 5(e) or to any finding that the plaintiff was not at the moment "engaged in the craft." These explanations indicated that the Executive Board of the Local simply wanted to rid themselves of a member, who, at union meetings and in public, took positions contrary to, and expressed himself in criticism of, the officers of the Local. That, according to the Local's president, prompted the action of the Board. The plaintiff, too, testified that an election of officers of the Local was imminent at the time and that he was vigorously supporting an opponent of the incumbent president. He contends that his denial of readmission was likewise for the purpose of preventing him from voting or participating in this approaching Local election.

On May 25, 1973, the plaintiff formally appealed in writing the denial of readmission and the revocation of his honorary withdrawal card to the Joint Council, with which the Local was affiliated.[2] In his letter appealing, the plaintiff requested that a hearing on the appeal be held in Richmond, Virginia "because I have not worked for over a year * * * and I don't have the money for a trip outside the city of Richmond, Virginia." Following the receipt of this written appeal, the Secretary of the Joint Council of the Union to which the plaintiff's appeal was directed, wrote on June 6, 1973 to the Local, instructing it to "forward to this office at your earliest convenience detailed Minutes of this hearing [on plaintiff's readmission application] and any other facts you feel are pertinent."

During this time when the appeal of the plaintiff was pending and the Joint Council had for review the Minutes of the Executive Board's action, the president of the Local testified that he questioned the validity of the unanimous action of the Executive Board; in fact, he said he regarded from the outset the action of the Executive Board as invalid. He seems to suggest that his feeling of invalidity related only to the revocation of the plaintiff's withdrawal status but this does not seem to accord with his statement of the matters about which he was uncertain and about which he sought advice from the International officers of the Union. He had doubt about the construction to be given the language of Article II, § 2(a) of the International Constitution declaring "[a]ny person shall be eligible to membership in this organization * * * ," though he had read it a number of times in an effort to get its meaning. He appeared confused, also, about the construction of the term "engaged in the craft," which later was declared by the Local to be the basis for its denial of readmission. He testified, too, that the Local had never been confronted with a case similar to that presented by the plaintiff's application for readmission. It was for these reasons that he appealed to the Internation-

al headquarters for advice. International headquarters in turn either suggested or instructed the Local on the action to be taken to clear up the situation presented by plaintiff's request for readmission and the Executive Board's revocation of his withdrawal status. Whether the instructions or advice of the International were induced by the plaintiff's appeal or by the request for advice on the part of the Local's president (though the exhibits would indicate the former) is not material. In any event, the Executive Board of the Local, acting apparently on the advice received, rescinded its previous action on June 11, 1973, and proceeded to withdraw the revocation of plaintiff's withdrawal status but denied him "the right to become a member in good standing of the Local Union since by Johnson's own admittance he is not working at the craft."

Though the plaintiff had requested that his appeal be heard in Richmond, the Joint Council fixed the hearing of the appeal in Norfolk, Virginia. In the meantime, the plaintiff testified he and his family had been subjected to continuous harassment and threats, intended to discourage him from prosecuting his appeal. Both he and his wife received menacing anonymous telephone calls relating to the appeal. Since the plaintiff had an unlisted number, but one which had been given earlier to the Local, he ascribed the anonymous calls to the Local and its members. He identified specifically one member of the Local who had threatened him. He said in his testimony that his family became very frightened by the continuous harassment and in this tense situation, the plaintiff claimed he felt compelled to abandon the pursuit of any administrative remedies. He now seeks relief by this action filed under the Act.

█ The primary defense asserted by the Local Union at trial and on this appeal is a claim that, as a matter of law, the Court lacked jurisdiction because of the failure of the plaintiff to exhaust adminis-

2. *See* Article XIX, § 2(a), p. 97, for the appeal procedure. The composition of the Joint Coun-

cil and the General Executive Board is set forth in Article XV, § 1(a) and § 2(a) and (b).

trative remedies within the Union before suing, or, in the alternative, that the Court erred in failing to submit the exhaustion issue to the jury under an appropriate charge. In support of this contention, it relies on that provision of the Act which declared that anyone seeking to sue thereunder "may [as a prerequisite to a right to sue] be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such [labor] organization, * * *." § 411(a)(4), 29 U.S.C. This provision, however, is stated in permissive and not mandatory terms and "allows the courts in their discretion to determine whether pursuit of such remedies is required." *Simmons v. Avisco, Local 713, Textile Workers Union* (4th Cir. 1965), 350 F.2d 1012, 1016; *Burris v. International Brotherhood of Teamsters, etc.* (W.D.N.C. 1963), 224 F.Supp. 277, 280 (Craven, C. J.). And the Courts have recognized a number of situations in which, in its discretion, the trial court may properly excuse a plaintiff from exhausting administrative remedies prior to filing his suit. The fact that the disciplinary action taken by the Union against a member was indisputably illegal or "void" is a proper excuse for failure to exhaust administrative remedies. *Simmons v. Avisco, supra; Eisman v. Baltimore Reg. Joint Bd. of Amal. Cloth. Wkrs.* (D.Md. 1972), 352 F.Supp. 429, 434, *aff'd* (4th Cir.), 496 F.2d 1313; Summers, *Local Limitations on Union Discipline,* 64 Harv.L.Rev. 1049, 1089 (1951). A "void" action in this context was defined as an "elastic term," to be "applied to proceedings where no proper notice was given, where the tribunal was biased, where the offense charged was not one specified in the union constitution or where there have been other substantial jurisdictional defects or a lack of fundamental fairness." [3] Similarly, administrative exhaustion will be excused where for any reason the right of appeal would be inadequate, illusory or futile. *Verville v. International Ass'n of Mach. & Aero. Wkrs.* (6th Cir. 1975), 520 F.2d 615, 621; *Steib v. New Orleans Clerks and Checkers, Local*

*No. 1497* (5th Cir. 1971), 436 F.2d 1101, 1106. Such a situation exists where the International body of the Union has expressed an opinion on the issue involved in the appeal and there is no indication of a likelihood that it might change its mind. *Farowitz v. Associated Musicians of Greater New York* (2d Cir. 1964), 330 F.2d 999, 1002–3. Moreover, a free speech violation generally justifies dispensing with administrative remedies. *Semancik v. United Mine Workers of America Dist. # 5* (3d Cir. 1972), 466 F.2d 144, 150–151; *see, also, Giordani v. Upholsterers' International Union of No. Amer.* (2d Cir. 1968), 403 F.2d 85, 88, n. 7. Finally, whether, under the facts of the particular case, exhaustion is excused is a matter within the informed discretion of the trial court and does not present an issue to be submitted to the jury under appropriate instructions.[4]

The District Court in this case did not, it is true, make an explicit ruling that exhaustion was excused. Yet such a ruling was implicit in the District Court's refusal to submit that issue to the jury under instructions, and we, therefore, have no difficulty in concluding that the District Court exercised its discretion to absolve the plaintiff from any obligation to exhaust his administrative remedies. In so doing, the District Court, in our opinion, committed no error.

■ There can be little controversy that the original action of the Local on May 13 was illegal and "void." It involved both the denial to the plaintiff of readmission as an active member and the revocation of his withdrawal card. While in one instance there was a denial of an alleged right and in the other a revocation of a right, both actions rested on identical grounds, as stated by the Local's president in his testimony, and were imposed for the same reason. Both were taken on account of the exercise by the plaintiff of his right to speak both in union meetings and in public, and the propriety of both turn on the validity of the procedure used and the reasons inducing

---

**3.** 350 F.2d at 1016–7.

**4.** *Simmons, supra,* at 1016.

the joint determination. The fact that this action was later rescinded as invalid and the denial of readmission was made again on a ground not declared in the earlier denial, but without notice or opportunity to be heard given the plaintiff, cannot give *ex post facto* validity to the invalid earlier action of the Executive Board, from which the plaintiff had already given notice of his appeal. The action of the Executive Board on May 13, 1973, was indisputably illegal [5] and, in challenging such illegal action, the plaintiff was under no obligation to exhaust administrative remedies. *Simmons v. Avisco, supra,* at 1016, 1017.

The defendant would dismiss as immaterial the plain illegality of this action on May 13. It seems to assume that, since it rescinded the action one month later, the rescission eliminated any claim for damages. The mere fact that the Local rescinded later its illegal action cannot wipe out plaintiff's right to recover for any damages he may have suffered as a consequence of such action. That was established in *Simmons* where a similar situation existed.[6] For damages, the plaintiff contended that he suffered emotional distress and injury to his reputation, both compensable items of damages in this type of case.[7] The injury to reputation especially as inflicted by the Local with its many contracts with employers, had the effect, the plaintiff asserted, in closing opportunities for employment in his trade. This was, he contended, a continuing injury as evidenced by his inability to secure any employment, despite his long experience in the trade.[8] This claim cannot be dismissed as the defendant contends it should be but provided a proper basis for recovery.

But the plaintiff would not confine his claim to the action of the Executive Board on May 13. He takes the position that the action of the Executive Board a month later, when it rescinded its action of May 13 and then reinstated the plaintiff's withdrawal status but denied him readmission was equally illegal under both § 411(a)(4) and § 529, 29 U.S.C., since the action taken was in retaliation for his exercise of his right of free speech and not for any reason authorized under the International Constitution and Bylaws. He asserts that subsection (b), which grants the right of readmission, confers an absolute right to readmission subject only to the exceptions specifically stated in subsection (e). He, also, claims that a charge based upon any exception listed in subsection (e) comes within the definition of disciplinary action, requiring notice and right to be heard, neither of which was accorded him in connection with the June 10 meeting of the Executive Board. The Local concedes that no formal charges were ever filed against the plaintiff involving possible commission of an act listed in subsection (e) for the denial of readmission. The president of the Local did testify that the plaintiff had been guilty of an offense "injurious to union principles," which is a ground for denial of readmission under subsection (e). This offense of the plaintiff, "injurious to union principles," was identified as a statement by him in public that an officer of the Local had been guilty of embezzlement. It is well settled that a union may not discipline a member because he has made, either in a union meeting or in public, a false and libelous charge of robbery or embezzlement against a union officer. Such discipline would be a clear violation of the member's right of free speech guaranteed him under the Act. *Salzhandler v. Caputo* (2d Cir. 1963), 316 F.2d 445, 450, *cert. denied,* 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963); *Cole v. Hall* (2d Cir. 1965), 339 F.2d 881, 882–3, *same case,* 462 F.2d 777, *aff'd* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Graham v. Soloner* (E.D.Pa.1963), 220 F.Supp. 711, 714; *Pearl v. Tarantola* (S.D.N.Y.1973), 361 F.Supp. 288, 292. In like manner, it could not deny the plaintiff

---

5. See, § 411(a)(5), 29 U.S.C.

6. 350 F.2d at 1018.

7. 350 F.2d at 1018.

8. For a similar case involving also a Teamster union member whose claim of damages was like that asserted by the plaintiff in this regard, *see Burris v. International Brotherhood of Teamsters, etc., supra* at 278.

readmission because of his exercise of his right of free speech in union meetings.

The main contention of the Local on this part of the case, however, is that subsection (c) of Article XVIII must be considered as an implicit condition on the right to readmission, even though it is not stated as such in either subsection (b) or subsection (e). The Local did not either in its Minutes of the meeting of May 13 or in its letter of May 15 to the plaintiff, state this as its reason for denying plaintiff readmission. This requirement that a member must be "engaged in the craft" at the time of his application for readmission only emerged definitely as a basis for denying readmission after the Local had been advised by higher authority how to proceed. It was certainly not one of the reasons identified by the president of the Local in his testimony with reference to the Executive Board's reasons for denying plaintiff readmission. And the president's claim that it was always understood by all the members of the Local that "engaged in the craft" was a condition to readmission is inconsistent with his admission that he was confused about what was even the meaning of "engaged in the craft." Moreover, he said the Local had never before faced a case such as the plaintiff's and thus had never had occasion to consider whether "engaged in the craft" was an "implicit condition" to readmission. If it were so clearly understood as he would suggest, why did the president of the Local find it necessary to seek advice from higher authority in the International? All of this gives credibility to the testimony of plaintiff and his witnesses that it was never understood that "engaged in the craft" was a condition to readmission. The shifting about, also, gives support to plaintiff's contention that the use of "engaged in the craft" as an excuse for the denial of readmission was a belated effort to give a semblance of legality to illegal action taken to punish the plaintiff for the exercise of free speech in connection with union affairs. In any event, it is manifest that there is a real issue between the parties to be resolved. But, to repeat its primary contention, the Local urges that such issue should have been resolved by resort to administrative remedies within the Union and that, until the plaintiff had exhausted those remedies, he was not entitled to sue.

■ There are two difficulties in the Local's position. In the first place, the Local, in conjunction with the higher echelons in the Union, had made any resort to administrative remedies within the Union futile.[9] It is inconceivable that the Joint Council would not approve the procedure followed and the disposition made of plaintiff's request for readmission as directed by higher authority within the Union. Plaintiff's appeal had been heard and decided at the top level of the Union without any notice or opportunity to be heard being accorded the plaintiff. Any subsequent hearing before a subordinate body of the International headquarters would be, under those circumstances, a mere formality, at worst, a pure farce.[10] There was no obligation on the plaintiff to exhaust administrative remedies, after the Local and the higher authority of the Union had made further appeal a hopeless formality. Moreover, there were two other reasons asserted by the plaintiff as an excuse for non-exhaustion. There was evidence, for instance— some uncontradicted—that the plaintiff and his family had been subjected to harassment and threats intended to induce the plaintiff not to proceed with his administrative appeal. And, under the plaintiff's theory of his case and as supported by evidence, the action of the Executive Board taken against him was prompted by a desire to punish plaintiff for the exercise of rights of free speech guaranteed by the Act. All in all, there were ample grounds for the District Court's finding that exhaustion was excused.

*Wiglesworth v. Teamsters Local # 592* (4th Cir. 1976), 552 F.2d 1027, relied on by

**9.** *Cooke v. Orange Belt Dist. Council of Painters* (9th Cir. 1976), 529 F.2d 815, 820.

**10.** *See Fulton Lodge No. 2 of Int. Ass'n of Mach. & Aero. Wkrs. v. Nix* (5th Cir. 1969), 415 F.2d 212, 216, *same case,* 452 F.2d 794, *cert. denied,* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972).

the Local, is in our opinion not apposite. It is true that in *Wiglesworth* the plaintiff sought waiver of exhaustion because he claimed, as does the plaintiff here, that resort to administrative remedies would be futile. But, in support of this contention, he relied on the fact that he had lost an earlier appeal in connection with an entirely different claim. That is quite different from this case, where, during the very pendency of the plaintiff's appeal, the defendant Local sought and secured from the Union hierarchy advice on the manner of dealing with and disposing of the appeal itself. Obviously, under those circumstances, the plaintiff could not reasonably look for any open-minded consideration of his appeal through union channels and his only remedy was in the courts.

 The Local has urged other grounds for reversal but such grounds require little discussion. It complains that plaintiff's evidence of damages was refuted by the defendant's testimony. It also, argues that the District Court should have found the plaintiff not to be credible and should have dismissed the action on this ground. The credibility of witnesses and the weight of the evidence are, however, matters for the jury and the District Court did not err in leaving such issues to the jury. Similarly, we find no error in the other rulings of the Court noted by the Local. The temporary commotion resulting when plaintiff's wife arrived at the courtroom was handled with dispatch by the Trial Judge who was best able to observe the trial atmosphere and to assess the possibility of prejudice to the defendant. He concluded that there was not such possibility of prejudice as to warrant a mistrial and we find no error in that decision. Nor is there any merit in the contention that the case was decided in part on (1) matters not included in the pleadings but actually litigated, and (2) matters foreclosed by the appropriate statute of limitations. Cases are to be decided on the record and the issues actually litigated at trial; if the evidence as developed provides a basis for recovery not covered strictly by the pleadings, a plaintiff is not to be denied relief on that account.[11] And, in pressing its claim of the bar of the statute of limitations, the defendant misconceives the relevancy of the proof of violations of plaintiff's right of free speech by the Local. The plaintiff's cause of action turned on the validity of the action of the Local's Executive Board in revoking his withdrawal card and in denying him readmission. The ground for plaintiff's contention of invalidity was that the action of the Local was intended to punish plaintiff for the exercise of his right of free speech as guaranteed by the Act. Under those circumstances, it was perfectly permissible to admit evidence of the alleged violations of free speech, not for grounding a cause of action thereon directly, but as supporting a claim of illegality in an action by the Local taken in May, 1973, because taken for an illegal purpose.

[11] After trial, the District Court seems to have concluded that the conduct of the Local constituted such "bad faith" as to authorize the awarding of reasonable attorney's fees to plaintiff's attorney for services in the litigation, to be included as a part of the judgment granted. Such an award is discretionary with the District Court[12] and we find no abuse of that discretionary authority in this case. However, in making its award, the District Court made an allowance to but one of plaintiff's counsel. It held that the other counsel, a New York firm, Keeffe Brothers, had abandoned the plaintiff and was not entitled to any allowance solely on that ground. The basis for the finding that such counsel had aban-

11. Rule 15(b) Fed.R.Civ.P., 28 U.S.C.; 6 Wright and Miller, *Federal Practice and Procedure*, p. 461; *Wasik v. Borg* (2d Cir. 1970), 423 F.2d 44, 46; *O'Brien v. Moriarty* (1st Cir. 1974), 489 F.2d 941, 943.

In Wright and Miller, supra, it is stated: " * * * But Rule 15(b) does not require that a conforming amendment be made and there is no penalty for failing to do so. The rule clearly states that the absence of a formal amendment or a request for leave to amend 'does not effect the result of the trial' of those issues actually litigated." Pp. 460–61.

12. *See Hall v. Cole* (1973), 412 U.S. 1, 14–15, 93 S.Ct. 1943, 36 L.Ed.2d 702; *Berg v. Watson* (S.D.N.Y.1976), 417 F.Supp. 806, 812.

doned the case was the absence of a senior member of the firm at trial. But the firm as such did not abandon the case. An associate in the firm, who had been intimately associated with the case from its inception and had done much of the investigation of both the applicable law and relevant facts, was present at trial, representing the firm. He was introduced to the District Court at the commencement of trial as plaintiff's chief counsel. There is no dispute that he took an active and important part in the trial and that his efforts did contribute to the successful result. In particular, he conducted the direct examination of the plaintiff and the cross-examination of the most important witness for the defendant Local. Merely because a senior member of the firm was prevented from attending the trial by another commitment which he could not postpone and the firm was represented at trial by an associate in the firm does not warrant a finding that the firm had abandoned the case and was not entitled to an allowance of a fee, if the Court concluded that the conduct of the defendant Local warranted it in exercising its discretion to grant judgment for attorney's fees against the Local. The District Court has already exercised that discretion to make an award to associated counsel; it should for the same reason make a reasonable allowance to the firm of Keeffe Brothers. We, of course, express no opinion on the amount of the award; that is a matter initially for the District Court.

The claim of Keeffe Brothers against the plaintiff himself under the contract of employment is a matter not properly before us on this record and we express no opinion thereon.

*AFFIRMED IN PART.*

*REVERSED IN PART.*

FIELD, Senior Circuit Judge, concurring specially:

I would be hard put to take issue with Judge Russell's thorough review and conclusions in this case, but I am somewhat concerned about the apparent indifference of the district court to the exhaustion provision of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(4).

While I agree that whether exhaustion is to be excused lies within the discretion of the trial court and does not present an issue for the jury, I think an explicit ruling should have been made by the district judge. "The Congressionally approved policy of first permitting unions to correct their own wrongs is rooted in the desire to stimulate labor organizations to take the initiative and independently to establish honest and democratic procedures," [1] and the exhaustion provision should not be treated as a mere procedural detail. *See Wiglesworth v. Teamsters Loc. Union No. 592*, 552 F.2d 1027 (4 Cir. 1976).

---

1. *Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 79 (2 Cir. 1961).