Richard OSTROWSKI; John Lynch; Michael J. McGarry; and Thomas Moran, Plaintiffs,

v.

LOCAL 1–2, UTILITY WORKERS UNION OF AMERICA, AFL–CIO; Patrick J. Gallagher, President, Local 1–2, UWUA, sued in his individual and official capacities; James Joy, Business Manager, UWUA, sued in his individual and official capacities; and John Clancy, First Vice President, UWUA, sued in his individual and official capacities, Defendants.

No. 80 Civ. 0075.

United States District Court, S. D. New York.

March 17, 1980.

Nancy Stearns, Frank E. Deale, New York City, for plaintiffs.

Battle, Fowler, Jaffin, Pierce & Kheel by Samuel R. Pierce, Jr., David Fleischer, Lawrence Mittman, New York City, for defendants.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, amicus curiae; John W. Corwin, Ezra I. Bialik, Asst. Attys. Gen., New York City, of counsel.

### OPINION

MOTLEY, District Judge.

Defendants have moved for an order dismissing the complaint in this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs have moved for a preliminary injunction ordering defendants to: 1) immediately reinstate plaintiff Richard Ostrowski as shop steward; 2) refrain from presenting new evidence against plaintiff Ostrowski in his appeal presently pending before the National Executive Board; and 3) refrain from in any way disciplining plaintiffs for exercising their rights guaranteed under 29 U.S.C. § 401 et seq.

Plaintiffs are members of defendant Local 1–2, Utility Workers Union of America, AFL–CIO ("Local 1–2"). At issue in this action is the removal of plaintiff Ostrowski from his position as shop steward for Local 1–2. Plaintiffs allege that Ostrowski's removal is in violation of his rights under Section 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(2). Plaintiffs also allege that Ostrowski's removal violated the due process guarantees provided in Section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5).

*Plaintiffs' Complaint*

Plaintiffs' complaint includes the following allegations:

Plaintiff Richard Ostrowski is a member of Local 1–2 and has been employed by Con Edison since July, 1966. In October, 1976, plaintiff Ostrowski was elected as shop steward and has remained in that capacity until September 28, 1979. Ostrowski has never received any criticism for the manner in which he has carried out his functions as shop steward.

Among the responsibilities of shop steward is to take action with respect to the health and safety of workers. In carrying out the functions of shop steward, Ostrowski has been concerned about questions of the health and safety of workers for whom he acts as steward, in particular, the dangers of low-level radiation to which workers at Con Edison's Indian Point nuclear power plant are exposed.

Periodically there are repair jobs at Indian Point which require workers who do not regularly work at that facility. There is a limited number of workers who would voluntarily agree to work at Indian Point on such short-term repair jobs. On some occasions a number of union members have been required to work at Indian Point when there have been an insufficient number of volunteers. Ostrowski has also been concerned about the dangers of low-level radiation because, as a Con Edison employee and union member, he may be faced with the possibility of working at Indian Point if and when there are not enough welders who are willing to volunteer to work there.

In April, 1978, in response to his own concern, and fears expressed by other union members, including some persons for whom Ostrowski acted as shop steward, plaintiffs Ostrowski, John Lynch, Thomas Moran, and other union members formed a group called "Concerned Employees Against Radiation Exposure." The group met with defendants James Joy and Patrick J. Gallagher, officers of Local 1–2, to express their views. The group requested speakers from the union who would fully present the health questions concerning radiation. Defendants Joy and Gallagher failed to provide speakers and instead referred the group to the union safety consultant, Philip Lorio, who only provided information expressing one side of the controversy concerning radiation danger, stating that low-level radiation presents no danger and that current exposure levels were safe.

In the spring of 1979, Ostrowski and other union members were given to believe that in the late summer a greater than normal number of Con Edison employees would be needed to do repairs at the Indian Point power plant. In an effort to provide

union members with information to enable them to make an informed decision about whether they wished to volunteer or otherwise work at Indian Point, Ostrowski, under the auspices of Concerned Employees Against Radiation Exposure, arranged a meeting for June 6, 1979, at the Knights of Columbus Hall in the Bronx (hereinafter referred to as the "Narjarian meeting). Through a group known as the "SHAD Alliance," Ostrowski obtained a speaker, Dr. Thomas Narjarian, who had done research concerning the dangers of low-level radiation.

On July 27, 1979, Ostrowski was informed that charges had been brought against him in connection with the Narjarian meeting by defendant John Clancy, First Vice-President of Local 1–2, "for collaborating with a group called the S.H.A.D. Alliance whose purpose it is to close the Indian Point Plant." On August 16, 1979, Ostrowski was tried by the Executive Committee of the union, sitting as a trial committee. At the trial, Ostrowski requested that a verbatim transcript by a neutral court reporter be provided or that he be permitted to tape the proceeding. The request by Ostrowski for a transcript or for permission to tape the proceedings was denied. On August 29, 1979, Ostrowski received the opinion of the Executive Committee finding him guilty of willfully harming the union and removing him as shop steward for eighteen months.

On September 6, 1979, Ostrowski received a letter from Richard Bestoff, Acting Chairman of the Trial Committee, informing him that, after consultation with the union's attorney, the Executive Committee had decided to give him a new trial because of the failure to provide a transcript. The second trial of Ostrowski was held on September 12, 1979. Ostrowski was found guilty of willfully harming the union and was suspended as shop steward for fourteen months.

According to union procedure, the report of the Trial Committee was to be reviewed by a union meeting scheduled for September 26, 1979. The report of the Trial Committee was adopted by voice vote of the union membership. Ostrowski was formally notified of that decision by a letter dated September 28, 1979, which he received on October 2, 1979.

Plaintiff filed an appeal with the National Executive Board pursuant to Section 10 of the By-Laws of Local 1–2 and requested a stay of the decision of Local 1–2 pending appeal. In support of his stay, Ostrowski submitted petitions requesting his reinstatement, signed by fifty-one persons for whom he acted as shop steward. On December 10, 1979, Ostrowski received a letter from the Secretary-Treasurer of the union, denying Ostrowski's motion for reinstatement as shop steward pending appeal.

Plaintiff alleges that the purpose of defendants' actions removing Ostrowski as shop steward was to silence Ostrowski and other union members who seek to obtain and share information on the dangers of low-level radiation.

*Motion to Dismiss*

■ Defendants have moved for an order dismissing the complaint in this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that the LMRDA requires the dismissal of this action because plaintiffs have failed to exhaust their internal union remedies. The relevant provision of the LMRDA is set forth in 29 U.S.C. § 411(a)(4). Section 411(a)(4) provides that a union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within [his union], before instituting legal or administrative proceedings." The limitations of Section 411(a)(4) are permissive; thus, whether or not a plaintiff will be required to utilize his internal union appeals is a matter within the discretion of the trial judge. *Keeffe Bros. v. Teamsters Local Union No. 592*, 562 F.2d 298, 303 (4th Cir. 1977); *Semancik v. United Mine Workers of America District # 5*, 466 F.2d 144, 150 (3d Cir. 1972); *Giordani v. Upholsterers International Union of North America*, 403 F.2d 85, 88 (2d Cir. 1968); *Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 78 (2d Cir.), *cert. denied*, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961).

It is well-established that "a free speech violation generally justifies dispensing with administrative remedies." *Keeffe Bros. v. Teamsters Local Union No. 592, supra*, 562 F.2d at 303 (citing *Semancik v. United Mine Workers of America, supra*, 466 F.2d at 150–51); *see Giordani v. Upholsterers International Union, supra*, 403 F.2d at 88 n.7. *See also Bradford v. Textile Workers of America, AFL–CIO, Local 1093*, 563 F.2d 1138 (4th Cir. 1977). In the case at hand, plaintiffs have alleged a free speech violation which would justify dispensing with administrative remedies.

Moreover, while Section 411(a)(4) provides that a union member may be required to exhaust reasonable hearing procedures, that section also provides that exhaustion shall not be required after "a four-month lapse of time." In the case at hand, not only have more than seven months elapsed since Ostrowski was informed that charges had been brought against him, but also more than four months have elapsed since Ostrowski filed his appeal with the National Executive Board. Pursuant to Section 411(a)(4), Ostrowski need not exhaust his internal union remedies since the four-month period has elapsed.

Defendants argue that the delay in the National Executive Board appeal was occasioned solely as a result of an alleged request by Ostrowski for further time to perfect his appeal. Defendants argue that a plaintiff cannot take advantage of his own delays to satisfy Section 411(a)(4). *See Carroll v. Associated Musicians of Greater New York, Local 802*, 235 F.Supp. 161, 171 (S.D.N.Y.1963). This court finds, however, that the record does not support defendants' claim that Ostrowski somehow improperly delayed his own appeal.

Ostrowski was formally notified of the Trial Committee's decision by a letter dated September 28, 1979, which he received on October 2, 1979. Under Article XX, Section 9, of the by-laws of Local 1–2, Ostrowski's appeal was due thirty days from the date of the letter notifying him of the Trial Committee's decision. Because the letter was dated September 28, 1979, the thirtieth day

fell on a Sunday, October 28, 1979. Ostrowski telephoned Richard Bestoff for information concerning the due date of his appeal to the National Executive Board. Bestoff indicated to Ostrowski that it would be acceptable if the appeal were filed on Monday, October 29, and it would not even be a problem if it arrived later. Ostrowski's appeal was then mailed by U. S. Government Express Mail on Saturday, October 27, 1979, with the guarantee that it would be delivered no later than Monday, October 29, 1979. The Express Mail receipt appears to indicate that actual delivery was made and acknowledged on October 28, 1979, or at the latest, October 29, 1979. Nevertheless, by letter dated November 7, 1979, Ostrowski was informed that his appeal was received in the National Secretary-Treasurer's office on October 31, 1979. Ostrowski was further informed that since his appeal was mailed and in transit to the National Office within the time specified, it would be considered as timely.

Thus, the record indicates that: 1) Ostrowski was informed that it would be acceptable if his appeal were filed on October 29, or later; 2) while the National Secretary-Treasurer, Marshall M. Hicks, did not receive Ostrowski's appeal until October 31, the Express Mail receipt demonstrates that someone in the National Office received the appeal on October 28 or 29; and 3) Ostrowski's appeal was considered as timely by the National Office. Accordingly, defendants' argument that Ostrowski is attempting to take advantage of his own delay is without merit.

In summary, the court concludes that, in the court's discretion, plaintiffs will not be required to utilize internal union appeals before bringing this action. In light of the free speech violation alleged by plaintiffs, exhaustion of internal union appeals will not be required in this action.

Defendants also argue in support of their motion to dismiss that Ostrowski's position as a union shop steward is not afforded the protection of the LMRDA. Defendants argue that, therefore, the court should dismiss the complaint for lack of subject matter

jurisdiction and for failure to state a claim upon which relief can be granted.

In support of their argument that Ostrowski's position as a shop steward is not afforded the protection of the LMRDA, defendants erroneously cite the Second Circuit's decision in *Newman v. Local 1101, Communications Workers of America* (*Newman I*), 570 F.2d 439 (2d Cir. 1978). In *Newman I*, contrary to defendants' suggestion, the Second Circuit explicitly recognized that "[a]s a member of the union a union official or employee, of course, enjoys the rights guaranteed by LMRDA, . . . and his suspension or removal in reprisal for his exercise of his free speech rights as a member would violate the Act." *Id.* at 444–45 [citations omitted]. Of course, the Second Circuit also recognized that "[o]n the other hand, a union official or employee also has certain duties toward the organization he represents and its leadership, which . . . has been entrusted with the responsibility for supervision of the union's affairs." *Id.* at 445. The Second Circuit explained its reasoning in this situation as follows:

> In this tension between conflicting rights and duties of the union and its agents the balance to be struck depends on whether the union representative's exercise of his free speech rights may reasonably be viewed as impairing his ability to function effectively as a representative of the union's management. If so, the union may remove him, provided he remains free as a member openly to criticize the union's leadership and its policies without reprisal. . . .

*Id.*

The Second Circuit held in *Newman I* that the trial court must determine "whether a member's opposition to the union's programs or policies may be reasonably viewed as precluding him from acting effectively as its representative, and whether his removal from his official position would tend to prevent him or others from exercising their rights as members under Title I of LMRDA." *Id.* Thus, it is obvious that defendants' reliance upon *Newman I* for the proposition that Ostrowski's position as

a shop steward is not afforded the protection of the LMRDA seriously misreads the Second Circuit's *Newman I* holding.

■ In light of *Newman I*, plaintiffs' complaint clearly states a claim upon which relief can be granted, and the court does have subject matter jurisdiction of this action. Plaintiffs have alleged that the purpose of defendants' actions removing Ostrowski as shop steward was to silence Ostrowski and other members who seek to obtain and share information concerning the dangers of low-level radiation. Plaintiffs have further alleged that the effect of removing Ostrowski as shop steward has been to silence him and others who wish to obtain and share information concerning the dangers of low-level radiation. Under the standards set forth in *Newman I* plaintiffs' complaint states a claim upon which relief can be granted.

■ The court is mindful of the fact that the Trial Committee's report purported to base its finding upon the conclusion that Ostrowski "and SHAD ALLIANCE are working together with the goal of closing the Indian Point Plant, all to the great harm of this Local Union and its members." Nevertheless, the Trial Committee's purported reliance upon Ostrowski's alleged collaboration with the SHAD Alliance does not preclude the possibility that Ostrowski was, in fact, removed as shop steward for seeking to obtain and share information on the dangers of low-level radiation, in violation of his free speech rights guaranteed by the LMRDA. The free speech rights guaranteed by the LMRDA would be virtually meaningless if they applied only where the union's stated reasons for removing a union official included a violation of LMRDA rights. Not unexpectedly, a union's stated reasons for an official's removal will rarely, if ever, admit a violation of LMRDA free speech rights. Thus, a plaintiff must be given the opportunity to present circumstantial and direct evidence demonstrating a violation of LMRDA free speech rights despite a union's representations to the contrary. In the case at hand, defendants' argument that plaintiffs' complaint should

be dismissed is wholly inappropriate, especially in light of the gravity of the allegations in the complaint.

■ Defendants have advanced the somewhat puzzling argument that the union removed Ostrowski as shop steward because Ostrowski "advocated the closing of the Indian Point plant in direct contravention of Local 1–2's policy." This argument must be rejected, as it is wholly contrary to the record in this case. The union never charged Ostrowski with advocating the closing of the Indian Point plant, nor did the Trial Committee find or conclude that Ostrowski advocated the closing of the Indian Point plant. In fact, an examination of the transcript of the September 12, 1979, trial does not appear to reveal any substantial evidence offered by the union which might tend to prove that Ostrowski advocated the closing of the Indian Point plant. Whatever the explanation for defendants' claim that Ostrowski was removed as shop steward because he advocated the closing of the Indian Point plant, this claim bears no relationship to the record before this court.

In summary, the court concludes that defendants' motion to dismiss the complaint in this action must be denied.

*Preliminary Injunction: Reinstatement of Ostrowski*

Plaintiffs have moved for a preliminary injunction ordering defendants to immediately reinstate Ostrowski as shop steward. The standard for issuance of a preliminary injunction in the Second Circuit is as follows:

> [T]here must be a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief. . . .

*Caulfield v. Board of Education of the City of New York*, 583 F.2d 605, 610 (2d Cir. 1978) [emphasis in original].

■ In the case at hand, the court is of the opinion that plaintiffs have made a sufficient showing of possible irreparable injury. As a general principle, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). Thus, a showing of a "chilling effect" on plaintiffs' exercise of First Amendment rights is adequate to support injunctive relief. *Chicago Area Military Project v. City of Chicago*, 508 F.2d 921, 926 (7th Cir.), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975). The notion that the right of freedom of speech may be "chilled" is equally applicable in the context of the LMRDA. *See Wood v. Dennis*, 489 F.2d 849, 855 (7th Cir. 1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974). The case at hand is no exception to the general principle that a "chilling effect" on the exercise of freedom of speech or other LMRDA rights constitutes irreparable injury.

■ Ostrowski has stated in his affidavit that, because of his removal as shop steward, he has found that other union members are afraid to discuss openly such questions as the dangers of low-level radiation. Ostrowski states that if he were to hold another meeting such as the Narjarian meeting, other union members would be afraid to come. Moreover, Ostrowski states that he is afraid that if he tried to hold any more such meetings, the union would take further retaliatory action against him.

Plaintiff John Lynch has stated in his affidavit that, because of Ostrowski's removal as shop steward, he feels that information concerning the effects of radiation is not available to him. Like Ostrowski, Lynch states that, because of Ostrowski's removal as shop steward, other union members would be afraid to attend a meeting such as the Narjarian meeting.

Plaintiff Michael McGarry states in his affidavit that, because of Ostrowski's removal as shop steward, he, too, cannot get information concerning the effects of low-level radiation. McGarry adds that Ostrowski has greater access to persons with information concerning radiation dangers than other union members.

Finally, plaintiff Thomas Moran, a shop steward, states in his affidavit that, because of Ostrowski's removal as shop steward, he is afraid that if he obtains and shares information on radiation dangers with the workers he represents, he will be disciplined by the union. Moran agrees that most Con Edison workers are now afraid to discuss openly the effects of radiation, and would be afraid to come to a meeting at which the subject was discussed. Moran states that, because of Ostrowski's removal as shop steward, he is not able to get information he needs to make an informed decision about whether to go to Indian Point.

The court is of the view that plaintiffs' affidavits confirm the possibility of irreparable injury. Plaintiffs have shown a "chilling effect" on the exercise of their LMRDA rights.

Defendants' arguments to the contrary are unpersuasive. Defendants argue that Ostrowski was disciplined as a union official, with no effect on his union membership rights. As discussed above, defendants erroneously construe *Newman I* as somehow depriving union officials of all LMRDA rights—such a reading of *Newman I* must be rejected. Defendants further argue that Ostrowski has presented no evidence that Local 1–2 would take further action against him if he tried to hold any more meetings. While Ostrowski could not expect defendants to admit what disciplinary action they might take in the future, certainly Ostrowski might reasonably infer that another meeting such as the Narjarian meeting would subject him to disciplinary proceedings.

Defendants also advance the rather surprising argument that Ostrowski's alleged willingness to talk with the press following his suspension as shop steward demonstrates that Ostrowski has not been chilled in the exercise of his LMRDA rights. Defendants overlook the fact that plaintiffs' may have been chilled in the exercise of their LMRDA rights *within the union* —thus, while plaintiffs can safely hope that the union will not punish them for contacts with the press, plaintiffs have alleged that

they are afraid to organize or attend meetings concerning low-level radiation with other union members. Defendants would require LMRDA plaintiffs to forego all rights of free speech in order to obtain injunctive relief—such a position will not be entertained by this court.

Defendants argue that union members still have access to Ostrowski and his information regarding low-level radiation despite Ostrowski's suspension as shop steward. Defendants' argument misconstrues the thrust of the "chilling effect." While union member may still seek information from Ostrowski at this time, the members are reluctant to do so for fear of incurring union sanctions. Plaintiffs have thus shown the possibility of irreparable injury.

In challenging plaintiffs' showing of possible irreparable injury, defendants reraise a number of procedural arguments. Defendants argue that Ostrowski has failed to exhaust his intra-union appeals. As the court noted above, Ostrowski had indeed filed a timely appeal. Now after four months have elapsed, no action has been taken on Ostrowski's appeal, and there is no indication that Ostrowski's appeal will necessarily be decided in the near future. Having met the exhaustion requirements set forth in 29 U.S.C. § 411(a)(4), Ostrowski now faces irreparable injury while his appeal remains pending.

Defendants argue that plaintiffs' affidavits constitute "bootstrapping" insufficient to show the possibility of irreparable injury. Defendants would, in effect, require the court to ignore any affidavits submitted by parties to litigation before this court. The difficulty of defendants' position is illustrated by the fact that, if the court were to adopt defendants' position, the court would also be compelled to ignore the union's affidavits since they too were "obviously constructed for purposes of this litigation."

In summary, the court concludes that plaintiffs have made a sufficient showing of irreparable injury.

The court is of the view that, in light of the factors discussed above, plaintiffs have

shown not only possible irreparable injury, but also a balance of hardships tipping decidedly toward plaintiffs. Defendants have not shown any way in which the union might be harmed by an order directing Ostrowski's reinstatement pending the final determination of this action. Ostrowski has never received any criticism for the manner in which he has carried out his functions as shop steward.

Defendants' sole suggestion regarding hardship to the union is a rather cryptic reference to the Second Circuit's statement in *Newman I* that "[t]o obligate union leadership to tolerate open defiance of, or disagreement with, its plans by those responsible for carrying them out, would be to invite disaster for the union." *Newman v. Local 1101, Communications Workers of America, AFL–CIO, supra,* 570 F.2d at 445. Unfortunately for defendants, the passage from *Newman I* quoted above has no relevance to the case at hand. As discussed above, the union never charged Ostrowski with advocating the closing of the Indian Point plant, nor did the Trial Committee find or conclude that Ostrowski advocated the closing of the Indian Point plant. Moreover, the union failed to offer any substantial evidence during Ostrowski's trial which might tend to prove that Ostrowski advocated the closing of the Indian Point plant. On the record before this court, there is no reason to believe that Ostrowski has openly defied, or even disagreed with, union plans or policies regarding the Indian Point plant, low-level radiation, or anything else for that matter. Thus, defendants have failed to show any hardship to the union if Ostrowski is reinstated. As there is a showing of a balance of hardships tipping decidedly toward plaintiffs, the critical question is whether plaintiffs have shown "serious questions going to the merits to make them fair ground for litigation."

Defendants agree with the proposition that "workers who hold meetings to discuss dangers to which they may be exposed at their place of employment are protected by law from being disciplined for such activity.

A serious question going to the merits, accordingly, is whether the purpose of Ostrowski's removal as shop steward was to silence Ostrowski and other members who seek to obtain and share information concerning the dangers of low-level radiation. If the purpose of Ostrowski's removal as shop steward was, in fact, to silence Ostrowski and other union members, then plaintiffs' success on the merits would be virtually assured.

As noted above, the Trial Committee's purported reliance upon Ostrowski's alleged collaboration with the SHAD Alliance does not preclude the possibility that Ostrowski was, in fact, removed as shop steward for seeking to obtain and share information on the dangers of low-level radiation. Serious questions going to the merits are raised, since plaintiffs must be given an opportunity to present circumstantial and direct evidence demonstrating a violation of LMRDA free speech rights despite the stated conclusions in the Trial Committee's report. The subjects of proper inquiry in resolving these serious questions include: 1) the historical background of the decision, particularly if it reveals a series of union actions taken for impermissible purposes; 2) the specific sequence of events leading to the challenged decision; 3) departures from normal procedural sequence; 4) substantive departures, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached; and 5) the administrative history, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meeting, or reports. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266–68, 97 S.Ct. 555, 563–65, 50 L.Ed.2d 450 (1977); *Iannacone v. Board of Education of the City School District of the City of Yonkers, New York,* 78 Civ. 4433, slip op. at 11 (S.D.N.Y. Feb. 19, 1980).

Plaintiffs note evidence which certainly suffices to raise serious questions as to the purposes of the union's removal of Ostrowski as shop steward. Plaintiffs note that

Ostrowski and the other witnesses at trial were repeatedly questioned about the Narjarian meeting and the leaflets announcing it. Moreover, all of the findings of fact in the Trial Committee report itself relate to the Narjarian meeting and the leaflets for the meeting. While the Trial Committee report is carefully phrased to base its conclusion upon Ostrowski's alleged collaboration with the SHAD Alliance in organizing the Narjarian meeting and in producing the leaflets, there are serious questions as to whether the Trial Committee's concern was the substance of the Narjarian meeting itself, which is protected under the LMRDA.

■ Even assuming, arguendo, that Ostrowski was removed as shop steward because of his collaboration with the SHAD Alliance, serious questions going to the merits still remain. In particular, there are serious questions as to whether the union's removal of Ostrowski as shop steward, because of his collaboration with the SHAD Alliance, violates Section 411(a)(2) of the LMRDA. To the extent that Ostrowski may have collaborated with the SHAD Alliance, the Trial Committee's report includes findings which, at most indicate that Ostrowski collaborated with the SHAD Alliance *in the course of Ostrowski's activities protected by the LMRDA.* For example, the Trial Committee report seems to conclude that Ostrowski collaborated with the SHAD Alliance in preparing and distributing leaflets announcing the Narjarian meeting. In addition, the Trial Committee report apparently concludes that Ostrowski collaborated with the SHAD Alliance in organizing the Narjarian meeting itself. As discussed above, it appears beyond dispute that, under the LMRDA, Ostrowski was engaged in protected activity when he organized a meeting on the dangers of low-level radiation and distributed leaflets announcing the meeting. Nevertheless, the Trial Committee report seemingly recommended Ostrowski's removal as shop steward because he had engaged in such protected activity in collaboration with the SHAD Alliance. Thus, the essence of the Trial Committee report is that Ostrowski was removed as shop steward for associating

with, or working with, the SHAD Alliance in organizing a meeting protected by the LMRDA.

Serious questions are raised by this reading of the Trial Committee report, as it would seem that Ostrowski was removed as shop steward, in effect, for associating with the SHAD Alliance. An examination of the legislative history of the LMRDA leaves little doubt that Section 411(a)(2) should be read as protecting freedom of association. Section 411(a)(2) was enacted as part of a statute entitled The Bill of Rights of Members of Labor Organizations. During congressional debates, it became clear that the statute was modeled after constitutional provisions:

> These basic guarantees are hardly new or novel—they are the essential and fundamental rights which every American citizen is guaranteed in the Bill of Rights of the Federal Constitution.

> As the senior Senator from Arkansas has said: There is no reason why a union man should be required to leave the rights guaranteed to him by the Constitution of the United States at the door when he goes to a union meeting.

105 Cong.Rec. 15530 (1959) (Rep. Griffin); *accord,* 105 Cong.Rec. 6476 (1959) (Sen. McClellan) ("[w]e should make those [inherent constitutional] rights apply to union membership as well as to other affairs of life").

■ The legislative history further indicates that the freedom of association encompassed by Section 411(a)(2) should not be limited to association among union members:

> [Section 411(a)(2)] gives union members the right to assemble in groups, if they like, *and to visit their neighbors* and to discuss union affairs, and to say what they think, or perhaps discuss what should be done to straighten out union affairs, or perhaps discuss the promotion of a union movement, or perhaps a policy in which they believe....

105 Cong.Rec. 6477 (1959) (Sen. McClellan) [emphasis added]. In the case at hand,

defendants may not like their SHAD neighbors, but Ostrowski's association with the SHAD Alliance is protected by the LMRDA.

Perhaps the clearest recognition of the freedom of association encompassed by the LMRDA was made in a statement by Senator McClellan:

Our basic labor policy is grounded in freedom of choice. In it we sought to make effective full freedom of association, with the right assured to associate or not to associate, to participate in collective action, or not to participate, according to the free decision of each individual for himself, without either restraint or coercion from any source. . . .

105 Cong.Rec. 6472 (1959) (Sen. McClellan).

The fact that Congress intended to include freedom of association within the protection of the LMRDA is not surprising, as freedom of association is an essential corollary to freedom of speech. It is beyond debate that freedom of association is an inseparable aspect of freedom of speech. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958); *see Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964).

The absence of any specific reference to freedom of association in Section 411(a)(2) does not preclude the court's reading of the LMRDA. In fact, the Supreme Court has repeatedly explained that the similar absence of any specific reference to freedom of association in the First Amendment does not preclude recognition of freedom of association:

The right of "Association" . . . is more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means. Association in that context is a form of expression of opinion; and while it is not expressly included in the First Amendment its existence is necessary in making the express guarantees fully meaningful.

*Griswold v. Connecticut*, 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). Given Section 411(a)(2)'s protection of freedom of speech, freedom of association is clearly necessary in making the LMRDA's express guarantees fully meaningful.

▮ In the First Amendment context, freedom of association has been described as "a right to join with others to pursue goals independently protected by the first amendment." L. Tribe, American Constitutional Law § 12–23, at 702 (1978). *See also* Raggi, *An Independent Right to Freedom of Association*, 12 Harv. C.R.–C.L. L.Rev. 1, 15 (1977) ("whatever action a person can pursue as an individual, freedom of association must ensure he can pursue with others"). In the LMRDA context, freedom of association necessarily entails a right to join with others to pursue goals independently protected by the LMRDA. In the case at hand, accordingly, freedom of association affords Ostrowski a right to join with others to pursue goals independently protected by the LMRDA—such as organizing a meeting on the dangers of low-level radiation and distributing related leaflets.

To the extent that the Trial Committee report found that Ostrowski had collaborated with the SHAD Alliance in "the preparation of written material and the presentation of lectures and discussion groups" concerning the dangers of low-level radiation, such collaboration or association was protected by the LMRDA. Ostrowski's minimal contact with the SHAD Alliance, at least as described in the Trial Committee report, could not possibly support a finding that Ostrowski's actions exceeded the boundaries of the protection of the LMRDA.

Defendants argue that the freedom of *assembly* protected by Section 411(a)(2) is limited to gatherings with other union members. The court need not address this issue, as the protection of freedom of association encompassed in Section 411(a)(2) is derived from the LMRDA's legislative history and the freedom of speech provision, not necessarily from Section 411(a)(2)'s freedom of assembly provision. Defendants

further argue that Ostrowski *collaborated* with the SHAD Alliance, as distinct from merely *associating* with the SHAD Alliance. Defendants' exercise in semantics is to no avail, as Ostrowski's collaboration with the SHAD Alliance consisted merely of working with the SHAD Alliance in organizing the Narjarian meeting—at least as the facts are discussed in the Trial Committee report. The Trial Committee report makes no findings of fact which would indicate that Ostrowski collaborated with the SHAD Alliance in any attempts to close the Indian. Point plant.

Of course, the conclusion that Ostrowski was engaged in activities protected by the LMRDA's freedom of association does not end the inquiry in this action. The court is mindful of the fact that Ostrowski was a Local 1–2 shop steward at the time he organized the Narjarian meeting. As discussed above, *Newman I* allows, under certain circumstances, removal of a union official who exercises his LMRDA rights. Thus, it would seem that Ostrowski could have been removed as shop steward if his association with the SHAD Alliance had proved his "opposition to the union's programs or policies [which] may be reasonably viewed as precluding him from acting effectively as its representative." *Newman v. Local 1101, Communications Workers of America, supra,* 570 F.2d at 445. At this point in the litigation, the court need not make a final determination as to whether Ostrowski's removal as shop steward violated the LMRDA, as explained in *Newman I.* For purposes of the present motion, it suffices to conclude that there are serious questions going to the merits, and moreover, that plaintiffs' motion for a preliminary injunction ordering defendants to immediately reinstate Ostrowski as shop steward should be granted.

*Preliminary Injunction: Enjoining Disciplining of Plaintiffs*

Plaintiffs have moved for a preliminary injunction ordering defendants to refrain from in any way disciplining plaintiffs for exercising their rights guaranteed under the LMRDA, 29 U.S.C. § 401 et seq.

As discussed above, plaintiffs have made a sufficient showing of possible irreparable injury. Plaintiffs have shown a "chilling effect" on the exercise of their LMRDA rights. In order to prevent this possible irreparable injury, it is appropriate for the court to issue a preliminary injunction ordering defendants to refrain from in any way disciplining plaintiffs for exercising their rights guaranteed under the LMRDA.

As discussed above, plaintiffs have also shown "serious question going to the merits to make them fair ground for litigation." The only remaining issue, accordingly, is whether there is a showing of a balance of hardships tipping decidedly toward plaintiffs. On this issue there can be little doubt. The court cannot imagine any way in which it would be a hardship upon defendants to refrain from in any way disciplining plaintiffs for exercising their rights guaranteed under the LMRDA. In effect, a preliminary injunction to this effect would merely require defendants to respect plaintiffs' LMRDA rights. Such a preliminary injunction presents not a hardship but enforcement of a legal duty already required of defendants by the LMRDA. In contrast, the failure to issue such a preliminary injunction would present a hardship to plaintiffs. Without such a preliminary injunction, plaintiffs would remain unrelieved from the "chilling effect" on the exercise of their LMRDA rights. Thus, plaintiffs have shown a balance of hardships tipping decidedly toward plaintiffs.

In summary, the court concludes that plaintiffs' motion for a preliminary injunction ordering defendants to refrain from in any way disciplining plaintiffs for exercising their rights guaranteed under the LMRDA, 29 U.S.C. § 401 et seq., should be granted.

*Preliminary Injunction: Presentation of New Evidence*

Plaintiffs have moved for a preliminary injunction ordering defendants to refrain from presenting new evidence against Ostrowski in his appeal presently pending before the National Executive Board.

Plaintiffs have failed to show any possible irreparable injury arising from the presentation of new evidence against Ostrowski in his appeal. Plaintiffs' affidavits simply do not allege the existence of any "chilling effect" on the exercise of their LMRDA rights which might arise from the presentation of new evidence against Ostrowski.

In fact, it would seem unlikely that any irreparable injury would arise from the presentation of new evidence against Ostrowski in his appeal presently pending before the National Executive Board. Assuming, arguendo, that plaintiffs are correct in their assertion that the presentation of new evidence is inconsistent with "principles of due process and double jeopardy" or of "fundamental fairness," plaintiffs have nonetheless failed to show possible irreparable injury. Pending the final determination of the action now before this court, Ostrowski will be reinstated as shop steward. Moreover, defendants will be ordered to refrain from in any way disciplining plaintiffs for exercising their rights guaranteed under the LMRDA. In light of these safeguards, it is unlikely indeed that any irreparable injury will arise from the presentation of new evidence against Ostrowski. Any injury to plaintiffs which might arise from the presentation of new evidence in Ostrowski's appeal is not irreparable—plaintiffs may challenge the actions of the National Executive Board after the Board has issued its "appellate" decision. During the pendency of the action before this court, Ostrowski will be serving as shop steward, thus precluding any irreparable injury.

In summary, the court concludes that plaintiffs' motion for a preliminary injunction ordering defendants to refrain from presenting new evidence against Ostrowski in his appeal should be denied. Of course, the court need not discuss the merits of plaintiffs' claim that the presentation of new evidence would violate principles of due process.

*Conclusion*

For the reasons stated above, the court reaches the following conclusions: 1) De-fendants' motion to dismiss the complaint must be denied. 2) Plaintiffs' motion for a preliminary injunction ordering defendants to immediately reinstate Ostrowski as shop steward must be granted. 3) Plaintiffs' motion for a preliminary injunction ordering defendants to refrain from in any was disciplining plaintiffs for exercising their rights guaranteed under 29 U.S.C. § 401 et seq. must be granted. 4) Plaintiffs' motion for a preliminary injunction ordering defendants to refrain from presenting new evidence against Ostrowski in his appeal presently pending before the National Executive Board is denied.

SO ORDERED.